DABOLD, Appellant, vs. THE CHRONICLE PUBLISHING COMPANY, Respondent.

*September 4 — September 25, 1900.*

*Libel and slander: Adulteration of butter: Violation of criminal statute: Moral turpitude: Pleading: Responsibility for libel.*

1. An article in a newspaper charging plaintiff with selling without any license, a compound in imitation of pure yellow butter, which contained an admixture of foreign fat, is not libelous: neither secs. 4607c, 4607d, Stats. 1898, nor any other statute of Wisconsin, makes sale of imitation butter or of oleomargarine criminal or prohibited because sold without license from the state, nor can it be said that, independently of any such law, absence of license renders disgraceful or discreditable sales otherwise innocent.

2. An article in defendant's newspaper which charged that plaintiff had sold adulterated butter *as of pure creamery make,* that the commodity was forty per cent. butter and the balance grease, and that purchasers had been misled, is libelous. It charges deceitful dealing in adulterated or imitation butter, absolutely prohibited by sec. 4607c, Stats. 1898, which makes such acts a crime, and the acts so charged also involve moral turpitude in their perpetrator, both as an individual and as a dealer in commodities owing a duty of honesty and good faith to his customers.

3. Under sec. 2677, Stats. 1898 (providing that in case of libel it shall not be necessary to state in the complaint any extrinsic facts, for the purpose of showing the application to the plaintiff of the de-

famatory matter out of which the cause of action arose, but it shall be sufficient to state generally that the same was published concerning the plaintiff), an allegation that defendant published an article in its newspaper, charging the D. P. Co. (meaning plaintiff) with having sold adulterated butter as pure creamery make, is sufficient, on demurrer, to show that the acts charged referred to plaintiff.

4. In an action for libel, a positive allegation that the defendant falsely and maliciously caused to be printed and published in a certain newspaper a certain libelous article concerning the plaintiff, is sufficient, on demurrer, to charge defendant with such control over matter inserted in the newspaper as to make it liable therefor.

APPEAL from an order of the circuit court for La Crosse county: O. B. WYMAN, Circuit Judge. *Reversed.*

Appeal from an order sustaining demurrer to complaint in substantially the following words:

"That the plaintiff is a produce merchant, and has been such produce merchant at the times hereinafter mentioned, with his place of business at La Crosse, Wisconsin. That on January 24, 1900, the defendant falsely and maliciously caused to be printed and published in the La Crosse Morning Chronicle, a daily newspaper published at La Crosse, Wisconsin, a certain libelous article of the plaintiff, and of the plaintiff in regard to his trade and business and in relation to his conduct therein, the words following:

"'BOGUS BUTTER.

"' *The Imitation Article is Found to be on Sale in This Town — Retail Merchants have been Selling the Stuff as the Real Thing — The Authorities at Madison are Analyzing a Number of Samples — State Law Regulating the Sale of such Products has been Violated.*

"'Adulterated butter has been sold in this city for some time past as of pure creamery make, and the imitation has been sold at the regular creamery prices.

"'Through a mere accident the stuff was discovered, and now there is no more to be had, not because the supply is

exhausted, but retail dealers who sold it have returned their stock to the wholesaler who has been handling it here.

"'The so-called butter has been shipped here from Armour & Company of Chicago, it is charged, and the Dabold Produce Company (meaning plaintiff) has acted as their local agents. A few days ago a regular customer of one of the suburban grocery stores discovered that the stuff sold him as butter was something other than the real thing. In spreading it on a peace of bread it resembled suet, and could be broken like a piece of cheese. He immediately notified the grocer, asking him if he had a license to sell that sort of stuff. The retailer was surprised to hear of such a condition of affairs, and informed *Mr. Dabold* (meaning plaintiff) of the matter. The latter says he will be responsible should there be any trouble over the matter.

"'Samples of the butter have been taken to three commission men in the city, one of whom says it contains only forty per cent. of butter and the balance is composed of grease. On Monday morning a sample was sent to H. C. Adams, of the state dairy and food commission, for examination, and an analysis will soon be sent back. In the meantime no more of the butter will be offered for sale.

"'The selling of adulterated articles of this kind requires a license under the state law, and violators are subject to a heavy fine.'

"Meaning and intending thereby to charge plaintiff herein with the violation of sections 4607c and 4607d, Wisconsin Statutes, which said sections provide a punishment for any person who shall offer or expose for sale, or have in his possession with intent to sell, any article, product, or compound made wholly or partly out of any fat, oil, or oleaginous substance, or compound thereof, not produced from unadulterated milk, or cream from the same, and without the admixture or addition of any fat foreign to said milk or cream, which shall be in imitation of yellow butter produced from such milk or cream, with or without coloring matter, and

Dabold vs. The Chronicle Publishing Co.

for the sale of the same without a license; and further meaning and intending to charge that the plaintiff was guilty of fraudulent, corrupt, and dishonest practices in his said business.

"And plaintiff further alleges that on the 26th day of January, 1900, the defendant herein falsely and maliciously caused to be printed and published in the said La Crosse Morning Chronicle a certain libelous article of the plaintiff, and of the plaintiff in regard to his trade and business and in relation to his conduct therein, the following words:

"'MORE ABOUT BOGUS BUTTER.

"'*The Analysis of Samples Sent to Madison Expected To-Day — Mr. Dabold Denies that He has Sold any of the Bad Butter.*

"'The announcement made in the Chronicle that bogus butter was being sold in this city has created considerable talk among commission men and retailers. The Chronicle obtained its information from a reliable source, and can back all the statements that have been made in this report. It is expected that an analysis of the samples of the so-called butter, which were sent to H. C. Adams, of the state dairy and food commission, will be received to-day or to-morrow, when it will be learned what portion of it is adulterated.

"'*Mr. Dabold* (meaning plaintiff) claims that he is not the local agent for Armour & Company, of Chicago, from whom it is said the butter was received, and that he buys all his butter from Minnesota. He also has sent samples of the butter in question to the food inspector for inspection.

"'There were no new developments yesterday, and probably nothing new will be learned until the record of Mr. Adams is received.' [Innuendo same as to previous publication.]"

For the appellant there was a brief by *Doherty & Baldwin*, and oral argument by *C. L. Baldwin.*

For the respondent there was a brief by *Fruit & Gordon*, and oral argument by *G. H. Gordon.*

DODGE, J.   It is obvious that the pleader intended to point out by means of the innuendo three defamatory meanings, as conveyed by the published words: first, selling, or offering or exposing for sale, a compound in imitation of pure yellow butter, which contains any admixture of foreign fat,— a crime under sec. 4607c, Stats. 1898; second, selling the same without a license, erroneously claimed to be forbidden by secs. 4607c and 4607d; and, third, acting fraudulently and corruptly as a produce dealer in selling an adulterated commodity as pure.

The second of these alleged meanings may be dismissed at once, for neither the statutes referred to nor any other statute of Wisconsin makes sale of imitation butter or of oleomargarine criminal or prohibited because without license from the state, nor can it be said that, independently of any such law, absence of license would render disgraceful or discreditable sales otherwise innocent.

The published article is, however, clearly capable of conveying the defamation suggested by the other two innuendoes as against some one,— whether as against plaintiff will be considered later.   Thus, it is alleged that adulterated butter has been sold *as of pure creamery make;* that the commodity is forty per cent. butter and the balance grease; and that both a customer and the retailer from whom he purchased were misled.   This charges deceitful dealing in adulterated or imitation butter, absolutely prohibited by sec. 4607c, not, as respondent seems to surmise, a dealing in oleomargarine, which may be lawful and innocent if the regulations as to marking, etc., prescribed by sec. 4607d are complied with.   The acts so charged also involve moral turpitude in their perpetrator as an individual, and especially as a dealer in such commodities, owing a duty of honesty and good faith to his customers.

More of uncertainty is involved in the consideration whether the publication in question may fairly be under-

stood as imputing the acts charged to the plaintiff. It is not for the court to decide on demurrer whether such is either the meaning or the understanding in fact of the words used, but only whether they are capable of such meaning, reasonably interpreted. If so, then the former question is for the jury. *Schild v. Legler*, 82 Wis. 73, 75; *Robertson v. Edelstein*, 104 Wis. 440, 443. No hesitation need result from the fact that reference is made to the Dabold Produce Company instead of the plaintiff by name, for the complaint expressly alleges that those words mean the plaintiff. Such allegation is sufficient, under sec. 2677, Stats. 1898, on demurrer, though, if controverted, it must be proved. This statute has relieved plaintiff from alleging extrinsic facts by way of inducement, which formerly might have been necessary, and has given to the innuendo increased force in alleging the application to plaintiff of the words used.

The article set forth is certainly capable of the construction that the imitation butter sold by the retailers was obtained by them from the plaintiff, called Dabold Produce Company, agent of Armour & Company, from whom it was shipped to La Crosse. That the retailers purchased in ignorance of the quality of the commodity is implied from the distinct allegation of the surprise of one of them when informed thereof by his customer. We are satisfied that the ordinary reader might well understand the article as asserting that the plaintiff was the source from which the "bogus butter" emanated, and that the pervading suggestion of deception was intended to apply to him, since in one instance, at least, the retailer is asserted to have been innocent, and to have been misled. So understood, the publication would be libelous.

2. It is objected that the complaint does not set forth any control by defendant over matter inserted in the La Crosse Morning Chronicle sufficiently to make it liable therefor, and *Simonsen v. Herold Co.* 61 Wis. 626, is invoked

as authority.  That defendant maliciously caused the article complained of to be published is alleged positively, and without any qualification.  This is sufficient on demurrer.  A similar allegation was held insufficient in the above-cited case, because it was deemed to be qualified by further allegations of specific facts, and to be only the pleader's conclusion from such other facts, namely, that defendant Coleman was a principal proprietor of the Herold Company, which owned, controlled, and published the paper containing the libel, and was manager of the paper.  These. facts were held not sufficient to show that he controlled or was responsible for the matter printed therein.  In the present case there is no such qualification or impairment of the direct allegation of defendant's responsibility.

The demurrer was erroneously sustained.

*By the Court.*— The order of the circuit court is reversed, and the cause remanded with directions to overrule the demurrer.