Donald HUCKO, Plaintiff-Respondent,

v.

JOS. SCHLITZ BREWING COMPANY, a Wisconsin corporation; Daniel F. McKeithan, Jr.; James M. Clabault.; James M. Ruth; James E. McCowan; and Thomas R. Errath, Defendants-Appellants.

Court of Appeals

No. 80–660. Submitted on briefs November 19, 1980.—
Decided January 27, 1981.
(Also reported in 302 N.W.2d 68.)

For the defendants-appellants, the cause was submitted on the briefs of *Clay R. Williams* of *Gibbs, Roper, Loots, & Williams,* of Milwaukee, and *Anthony F. Phillips* of *Willkie, Farr & Gallagher,* of New York, and *Anthony F. Phillips, Clay R. Williams, Philippe M. Salomon* and *Joseph T. Baio,* of counsel.

For the plaintiff-respondent, the cause was submitted on the brief of *William R. Jansen* of *McConnell & Campbell,* of Chicago, Illinois, and *Michael J. Spector* of *Quarles & Brady,* of Milwaukee, and *Francis J. McConnell* and *William R. Jansen,* of counsel.

Before Decker, C.J., Moser, P.J., and Cannon, J.

DECKER, C.J.  We granted this discretionary appeal from a nonfinal order of the trial court[1] to determine whether the defendants in this case, none of whom are engaged in the business of publishing newspapers,

---

[1] Defendants moved for an appeal as of right as well, which was denied.

magazines, or periodicals, fall within the coverage of sec. 895.05(2), Stats. The statute requires that an allegedly libeled plaintiff make a written demand for a retraction or correction before commencing a defamation action against certain defendants. The trial court held that sec. 895.05(2) applies only to news media defendants who publish newspapers, magazines, or periodicals, and denied the motions of the defendants in this case to dismiss plaintiff's defamation claims for noncompliance with the statute. We disagree and conclude that sec. 895.05(2) applies to nonmedia defendants whose libelous statements are published in a newspaper, magazine, or periodical, as well as to media defendants who ultimately publish the statements in their newspapers, magazines, or periodicals. We also conclude that sec. 895.05(2) does not apply to defamation claims arising out of statements broadcast on radio and television.

Because the plaintiff failed to give the individual defendants the notice required by sec. 895.05(2), Stats., we reverse that portion of the trial court order denying dismissal of plaintiff's claims for defamation against them arising out of publication in any newspaper, magazine, or periodical. We conclude as a matter of law that plaintiff complied with sec. 895.05(2) by giving the required notice to defendant Jos. Schlitz Brewing Company (Schlitz), and therefore we affirm that portion of the order denying dismissal of plaintiff's defamation claim against Schlitz. We also affirm that portion of the trial court order denying dismissal of plaintiff's claims against both the individual defendants and Schlitz, arising out of statements broadcast on radio and television.

On July 5, 1979, plaintiff Donald Hucko (Hucko), a former managerial employee of Schlitz, filed a complaint alleging, *inter alia,* defamation arising out of statements made by Schlitz which were printed in various newspapers and magazines, and were broadcast by radio and

television stations. The complaint alleged that Schlitz and five of its officers (individual defendants) "did compose, issue, and publish, or cause to be composed, issued, and published" in the various news media allegedly defamatory statements. The complaint also alleged compliance with sec. 895.05(2), Stats., as to Schlitz, but not as to the individual defendants. Defendants' appeal is limited to that portion of the order denying their motion to dismiss in which the trial court held that sec. 895.05 (2) applied only to news media defendants in a defamation claim.

## THE STATUTE

Section 895.05(2), Stats., provides:

(2) *Before any civil action shall be commenced* on account of any libelous publication in any newspaper, magazine or periodical, *the libeled person shall first give those alleged to be responsible or liable for the publication a reasonable opportunity to correct the libelous matter.* Such opportunity shall be given by notice in writing specifying the article and the statements therein which are claimed to be false and defamatory and a statement of what are claimed to be the true facts. The notice may also state the sources, if any, from which the true facts may be ascertained with definiteness and certainty. The first issue published after the expiration of one week from the receipt of such notice shall be within a reasonable time for correction. To the extent that the true facts are, with reasonable diligence, ascertainable with definiteness and certainty, only a retraction shall constitute a correction; otherwise the publication of the libeled person's statement of the true facts, or so much thereof as shall not be libelous of another, scurrilous, or otherwise improper for publication, published as his statement, shall constitute a correction within the meaning of this section. A correction, timely published, without comment, in a position and type as prominent as the alleged libel, shall constitute a defense against the recovery of any damages except actual damages, as well as being competent and

material in mitigation of actual damages to the extent the correction published does so mitigate them. [Emphasis added.]

## SCOPE OF SECTION 895.05(2), STATS.

"Statutory construction involves a question of law, and on such questions this court is not required to give any special weight to the conclusions of the trial court." *Roe v. Larson*, 94 Wis.2d 204, 206, 287 N.W.2d 824, 825 (Ct. App. 1979), *rev'd on other grounds*, 99 Wis.2d 332, 298 N.W.2d 580 (1980). However, "In the absence of ambiguity in a statute, resort to judicial rules of interpretation and construction is not permitted, and the words of the statute must be given their obvious and ordinary meaning." *Wisconsin Bankers Ass'n v. Mutual Savings & Loan Ass'n*, 96 Wis.2d 438, 450, 291 N.W.2d 869, 875 (1980). "When the statutory language is clear and unambiguous no judicial rules of construction are permitted, and the court must arrive at the intention of the legislature by giving the language its ordinary and accepted meaning." *State ex rel. Milwaukee County v. Wisconsin Council on Criminal Justice*, 73 Wis.2d 237, 241, 243 N.W.2d 485, 487 (1976).

Although sec. 895.05(2), Stats., does not come into play until libelous matter is published in a newspaper, magazine, or periodical, the statutory language does not limit its application to publishers of newspapers, magazines, or periodicals. The clear and unambiguous language of sec. 895.05(2) applies to defamation claims against defendants "alleged to be responsible or liable" for any libelous publication *"in any newspaper, magazine or periodical."* This provision applies to defendant Schlitz and the individual defendants, who are "alleged to be . . . liable" for libelous publications in various newspapers, magazines, and periodicals.

That clear expression of legislative intent is not an unusual result.[2] It is an elementary rule of defamation law that the author of a libelous statement is liable for any secondary publication[3] which is the natural consequence of his or her act. *Lehner v. Kelley,* 215 Wis. 265, 269, 254 N.W. 634, 636 (1934) ; 53 C.J.S. *Libel & Slander* §85 (1948). Secondary publication by a newspaper, magazine, or periodical may expose such a publisher to liability as well, but it does not relieve the original author from liability for the secondary publication. Section 895.-05(2), Stats., is directed at any person or persons liable or responsible for publication in a newspaper, magazine, or periodical and clearly encompasses the original author of an article, who remains liable for secondary publications in the news media.

Hucko argues that the statutory language of the correction procedure is inappropriate to a nonmedia defendant. Specifically, Hucko contends that for a defendant who does not publish a newspaper, magazine, or periodical, the language of sec. 895.05(2), Stats., "[t]he first issue published after the expiration of one week from the receipt of such notice shall be a reasonable time for the correction," is meaningless. That language refers to the publishing schedule of the newspaper, magazine, or periodical specifically named in the notice in which the author's

---

[2] This is also the way plaintiff interpreted sec. 895.05(2), Stats., in pursuing his claim against Schlitz. *See* note 8, *infra.* Addition of the individual defendants to the lawsuit appears to be an afterthought.

[3] "Publication, in the law of defamation, is the communication of defamatory matter to a third person, or persons." 53 C.J.S. *Libel & Slander* §79 (1948). *See Ranous v. Hughes,* 30 Wis.2d 452, 461, 141 N.W.2d 251, 255 (1966). In a case such as this, publication occurs in the first instance when the author first communicates his libelous matter to a third person. When the press "publishes" the libelous matter in its newspaper, magazine, or periodical, a secondary publication occurs, sometimes termed a "republication" or "repetition" of the statement originally published.

libel was repeated, and the schedule serves as a universal measuring tool to either the author of the libel or the media repeating it. To comply with sec. 895.05(2), a non-media author must publish a correction within this time frame in the same fashion as he published the libelous matter. To argue, as Hucko does, that a nonmedia author cannot compel the news media to repeat the correction is to ignore reality and begs the question. If the author's libel was sufficiently newsworthy that it was republished by the press, his correction should be equally or more newsworthy. Further, the plaintiff can prompt the press to print a correction by serving notice on it as well as on the author. The author discharges his opportunity to correct when he publishes a correction complying with sec. 895.05(2) within the time limits there prescribed, which encourages timely secondary publication by a responsible press.

Because our decision is based solely on the unambiguous language of sec. 895.05(2), Stats., there is no need to resort to statutes and interpretive case law from other jurisdictions. We have searched them all, however, but none of them are sufficiently similar in statutory language to sec. 895.05(2) for profitable comparison. Either by express language in text or title, most are specifically limited in application to media defendants by the respective state legislatures. An exception is 48 N.C. Gen. Stat. §2429:

Before any action, either civil or criminal, is brought for the publication, in a newspaper or periodical, of a libel, the plaintiff . . . shall at least five days before instituting such action serve notice in writing on the defendant, specifying the article and the statements therein which he alleges to be false and defamatory.

This statute was held applicable to nonmedia defendants in *Paul v. National Auction Co.,* 181 N.C. 1, 5, 105 S.E. 881, 883 (1921):

It is further insisted in support of appellant's principal objection that there is no allegation of notice being served on defendant, looking to a retraction and apology, pursuant to provisions of Consolidated Statutes, chapter 48, section 2429 *et seq.* In cases on these sections which have come under our observation, the suits were against the proprietors, or publishers and editors, of the newspapers and periodicals;[4] but . . . *the language of this legislation is broad enough to include, and is intended to and does include, a publication of the kind printed here, a publication by an individual having no business or other connection with the paper, etc.—and this seems to be the clear meaning and purport of the law* . . . [Emphasis added.]

The language of sec. 895.05(2), Stats., is equally broad, and applies to the nonmedia defendants in this case.

## EFFECT OF SECTION 895.05(2), STATS.

A correction published pursuant to sec. 895.05(2), Stats., serves to limit damages recoverable for libel published in a newspaper, periodical, or magazine to actual damages, and may serve to mitigate the latter as well.[5] The statute also does more than that. In plain and

---

[4] *But see Meier v. Meurer,* 8 Wis.2d 24, 98 N.W.2d 411 (1959), a defamation action against nonmedia defendants, where the Wisconsin Supreme Court noted that plaintiff had alleged service of written notice complying with sec. 331.05(2), Stats., the forerunner to 895.05(2). *Id.* at 27, 98 N.W.2d at 413.

[5] Timely correction or retraction of libelous material can be a better remedy than damages. Three groups are affected by libel laws: the general public; potentially libeled plaintiffs; and putative libel defendants. The community has an interest in the dissemination of accurate information. A correction or retraction, which timely provides such information, is more consonant with the public's interest in being informed than a damage award. *See* Comment, *Reply and Retraction In Actions Against the Press for Defamation: The Effect of Tornillo and Gertz,* 43 Fordham L. Rev. 223, 227 (1974). A plaintiff has an interest in the prompt restoration of a reputation which cannot be provided by financial redress. *See* Donnelly, *The Right of Reply: An Alternative to an*

unambiguous terms, the statute requires a plaintiff alleging libelous publication in a newspaper, magazine, or periodical to give notice to those alleged to be responsible or liable for the publication prior to commencing suit: "Before any civil action shall be commenced . . ." Our supreme court has stated that "if the language of a statute . . . deals with commencement of an action, then

*Action for Libel*, 34 Va. L. Rev. 867 (1948) : "After many months a plaintiff may obtain a judgment but. he will find that the victory in court seldom comes to the attention of one-tenth of the people who read the libel and who remain under the impression created by the offending publication." *Id.* at 873. "As a practical matter, retraction can come nearer to restoring an injured reputation than can money . . . ." *Davidson v. Rogers*, 281 Or. 219, 222, 574 P.2d 624, 625 (1978). The author of potentially libelous statements has an interest in mitigating any damage caused to a plaintiff. Mitigation is facilitated where the speaker is promptly informed of the content of the allegedly defamatory articles, which statements are claimed to be false, and what is claimed to be the truth. The conclusion that publication of a correction or retraction is a major remedy in defamation law was confirmed by our supreme court in *Webb v. Call Publishing Co.*, 173 Wis. 45, 52, 180 N.W. 263, 265 (1920) :

In Massachusetts exemplary damages are not recoverable in an action for libel. Only actual damage may be recovered. In that state it is held that a retraction is admissible as bearing upon the question of actual damages. *Ellis v. Brockton Pub. Co.*, 198 Mass. 538, 84 N.E. 1018. In that case it was said: "The publication of a retraction, complete in character and conspicuous in position, might be found to have a material effect in diminishing the mischief caused by the libel, and thus substantially reduce the damages sustained by the person libeled." That appeals to us as good sense. Where a newspaper publishes a libelous article concerning an individual and within reasonable time thereafter publishes a full and complete retraction, the latter article must in some degree neutralize the damaging effect of the first article; and where the amount of damages which the plaintiff has sustained by reason of defendant's misconduct is involved, the jury is entitled to have before it not only the original article which caused the damage, but the subsequent retraction as well, so that it may form an intelligent opinion as to the net damage plaintiff has sustained.

the failure to comply with its provisions before the suit is brought requires that the complaint be dismissed." *Rabe v. Outagamie County*, 72 Wis.2d 492, 499, 241 N.W.2d 428, 432 (1976) (citations omitted). *See also Yotvat v. Roth*, 95 Wis.2d 357, 360–61, 290 N.W.2d 524, 527 (Ct. App. 1980); *Elm Park Iowa, Inc. v. Denniston*, 92 Wis.2d 723, 728–29, 286 N.W.2d 5, 8 (Ct. App. 1979).[6]

Therefore, unless Hucko gave notice sufficient to comply with sec. 895.05(2), Stats., prior to bringing suit, it was error for the trial court to deny defendants' motions to dismiss.

## SUFFICIENCY OF NOTICE

Section 895.05(2), Stats., states that notice to those alleged to be responsible or liable, sufficient to provide a reasonable opportunity to correct, shall be given "in writing specifying the article and the statements therein which are claimed to be false and defamatory and a statement of what are claimed to be the true facts." To comply with sec. 895.05(2), notice must:

(1) be *in writing*;

(2) be directed to *those* alleged to be *responsible* or *liable;*

(3) specify the *article* and *statements therein* which are claimed to be false and defamatory;

(4) contain a *statement of* what are claimed to be the *true facts;* and

(5) be given *before* any civil action is commenced.[7]

[6] *See Westby v. Madison Newspapers, Inc.*, 81 Wis.2d 1, 259 N.W.2d 691 (1977), a libel action against media defendants, where our supreme court noted that plaintiffs "served a demand for retraction on the Capitol Times as required by sec. 895.05(2), Stats., *a prerequisite to the libel action." Id.* at 3, 259 N.W.2d at 692. [Emphasis added.]

[7] The person giving notice may also include a reference to sources from which the true facts may be ascertained with definiteness and certainty.

## A. Schlitz

Hucko's letter dated May 25, 1979 to Schlitz,[8] consti-
tuted sufficient notice under the above standards, and

[8] Plaintiff claims that the following letter was sent to Schlitz:

May 25, 1979

Jos. Schlitz Brewing Company
235 West Galena Street
Milwaukee, Wisconsin 53201

Dear Sirs:

Pursuant to the provisions of Section 895.05(2) of the Wis-
consin Statutes, you are hereby given notice that the Jos. Schlitz
Brewing Company, acting by and through its agents, including
but not limited to Daniel F. McKeithan Jr., James M. Clabault,
James M. Ruth, and James E. McCowan, is deemed responsible
and liable for the publication of the following false and defama-
tory statements of and concerning Donald S. Hucko which ap-
peared in The Milwaukee Journal, April 28, 1978, in an article
headlined "3 Suspended in New Probe at Schlitz":

"The Jos. Schlitz Brewing Co., already facing criminal and
civil trials for allegedly illegal marketing practices in the United
States, has suspended three officials of its exports sales depart-
ment after a corporate investigation into possible illegal activities
in the company's foreign operations.

"The company confirmed reports of the action Friday but re-
fused to indicate exactly what possible violations were being in-
vestigated.

" 'Preliminary indications are that violations of company policy
have occurred , . . and the employees involved have been placed
on leave of absence with full pay and company benefits pending
further inquiry,' the firm said in a statement made after inquiry
by The Milwaukee Journal.

"James Ruth, a lawyer for the brewery, identified the three
men as Donald Hucko, director of export sales; Robert J. Wagner,
administrator of export marketing, and Richard Sommers, man-
ager of export sales.

"Schlitz said the possible violations were discovered by the
company's marketing administration and compliance department,
which was established last year to insure that the company com-
plies with the law.

afforded Schlitz "a reasonable opportunity to correct the libelous matter" within the meaning of sec. 895.05(2),

"The firm said that after 'information generated by the company's internal controls raised questions' about the foreign operations, 'an in-depth investigation into the overseas marketing practices . . . was immediately begun by the company and it is still in progress.'

"The company said that it has informed the Securities and Exchange Commission of the possible violations and that it would also notify the U. S. Attorney's Office."

Said false and defamatory statements or statements of similar import for which Schlitz is also deemed responsible and liable were also published in the following newspapers:

1. The Milwaukee Sentinel, April 29, 1978, "3 Executives Suspended By Schlitz."

2. The Wall Street Journal, May 1, 1978, "Schlitz Suspends Export Sales Aides Pending Inquiry."

In addition, said false and defamatory statements or statements of similar import for which Schlitz is also deemed responsible and liable were published in the following trade journals:

1. Beer Marketer's Insights, May 15, 1978, "Those 3 Export Guys at Schlitz Fired; Had Been Suspended Short Time."

2. Modern Brewery Age, May 8, 1978.

Moreover, said false and defamatory statements or statements of similar import for which Schlitz is also deemed responsible and liable were broadcast over the the following television and radio networks:

1. WTMJ-TV (channel 4), April 28, 1978.

2. WITI-TV (channel 6), April 28, 1978.

3. Radio station WTMJ, April 28, 1978.

As Schlitz is well aware, the true facts regarding this matter are as follows:

Donald S. Hucko was originally hired by the Jos. Schlitz Brewing Company in November, 1959. He was first associated with the Export Marketing and Military Sales Department when he became its Director effective on or about February 1, 1978. He was suspended from that position on or about April 14, 1978; and his employment with Schlitz was terminated on or about May 4, 1978.

Any allegedly illegal or improper activities which occurred within the Export Marketing and Military Sales Department had occurred or had commenced several years prior to the time that Hucko first became asociated with it. Hucko had no knowledge

Stats. It specified the offensive articles by naming each newspaper, magazine, or periodical and the total and date of the offensive articles therein. It then set forth what were claimed to be the true facts.[9] It was in writing, directed to Schlitz, sent before any civil action was commenced, and alleged in Hucko's complaint.

Defendant Schlitz maintains that, as a matter of law, Hucko's letter failed to provide Schlitz with a reasonable opportunity to correct the allegedly libelous matter because it was not sent until thirteen months after publication. Schlitz contends that this constituted an unreasonable delay. Section 895.05(2), Stats., fails to prescribe any such reasonableness test for plaintiffs and we decline to impose such a standard. Section 895.05(2) specifies a

that any such activities had occurred. He did not participate and was in no way involved in any such activities. He was not responsible for any allegedly illegal or improper practices. In view of his short tenure in the Department, Hucko had no opportunity to discover or correct any such practices. In fact, Hucko believed that the activities of the Export Department had been thoroughly reviewed to ensure its compliance with the law before he became its Director.

Pursuant to the provisions of Section 895.05(2) of the Wisconsin Statutes, Schlitz is hereby given a reasonable opportunity to retract and correct said false and defamatory statements of and concerning Donald S. Hucko. Schlitz is requested to publish a full and fair retraction in all appropriate media in a position as prominent as that in which the false and defamatory statements originally appeared.

Sincerely yours,
Francis J. McConnell

FJM:nh

[9] Which statements in each article that are claimed to be false and defamatory becomes clear when the contents of the article, set forth in the letter, are compared with the statement of claimed true facts. While for the purposes of this appeal we find this sufficient under sec. 895.05(2), we note that the statute requires that the false statements contained in each article are to be *specified.*

limit upon a defendant's correction time, not upon a plaintiff's opportunity to give notice. The only time limit applicable to Hucko is the two-year limitation upon a defamation claim set forth in sec. 893.21(2), with which he complied.

## B.   Individual Defendants

Although Hucko did not allege that a notice pursuant to sec. 895.05(2), Stats., was given to the individual defendants, he claims that they had the requisite notice. Specifically, he claims that because his letter to Schlitz incorporated the names of the individual defendants, he complied with the written notice provision. This letter was addressed only to Schlitz. It asserted that Schlitz "is deemed responsible and liable" for the alleged defamatory statements. While the letter afforded Schlitz "a reasonable opportunity to retract or correct" the statements and requested Schlitz "to publish a full and fair retraction," it made no effort to give notice to the individual defendants that they were thought to be personally responsible or liable for the alleged defamatory statements or were afforded a correction opportunity. The same analysis applies to a letter Hucko claims in his brief that he wrote to Schlitz on May 5, 1978, the day after his termination, which stated that "serious damage was done to my reputation on a company, state and nationwide basis through newspapers, radio and television."[10]

---

[10] On appeal from an order denying a motion to dismiss for failure to state a claim upon which relief may be granted, the only facts of record are those in the complaint. We granted this discretionary appeal because we concluded that it would "[m]aterially advance the termination of the litigation [and] . . . clarify further proceedings in the litigation." Sec. 808.03(2)(a), Stats. Ordinarily we would not address facts which are not before us, but do so in this instance because we believe Hucko's argument will be reiterated to the trial court.

Hucko also asserts in his brief that on April 28, 1978, he called two of the individual defendants to tell them that the newspaper stories which had appeared that day were untrue and to demand that his name be cleared.[11] This notice is deficient under sec. 895.05(2), Stats., because it is not in writing.

## APPLICATION OF SECTION 895.05(2), STATS., TO RADIO AND TELEVISION BROADCASTS

Section 895.05(2), Stats., provides that "[b]efore any civil action shall be commenced on account of any libelous publication in any *newspaper, magazine or periodical,* the libeled person shall first give those alleged to be responsible or liable for the publication a reasonable opportunity to correct the libelous matter." [Emphasis added.] Because the statute makes no reference to television or radio broadcasts, we hold that the statute is not applicable to plaintiff's defamation claims against the individual defendants or Schlitz for the statements broadcast on radio and television and we remand for further proceedings on such claims. This decision is based on the unambiguous language of sec. 895.05(2). The legislature conspicuously failed to include radio or television broadcasts in this statute.[12] We are bound by the obvious and ordinary meaning of the words of the statute, which reflects this apparently intended omission, and need not resort to statutes and interpretive case law from other jurisdictions.

*By the Court.*—Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

---

[11] *See* note 10, *supra.*

[12] *Contra* sec. 895.052, Stats., entitled "Defamation by radio and television," which is applicable to broadcasting stations and networks.