STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Gerald DERENNE, Defendant-Appellant.

Supreme Court

*No. 79–404–CR. Argued May 1, 1981.—Decided June 2, 1981.*

(Also reported in 306 N.W.2d 12.)

For the petitioner the cause was argued by *Thomas J. Balistreri,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendant-appellant there was a brief and oral argument by *David Kagan-Kans* of Madison.

BEILFUSS, C.J.   This is a review of a decision of the court of appeals which reversed a judgment of the circuit court for Grant county: JAMES P. FIEDLER, Circuit Judge for Iowa county, presiding.

This case presents a question of whether the state introduced evidence which was sufficient as a matter of law to support a conviction for delivery of tetrahydrocannabinols (THC) in violation of secs. 161.14(4)(t) and 161.41(1)(b), Stats.,[1] as charged in the information

---

[1] Several statutory provisions are relevant to this review. Sec. 161.41(1)(b), Stats., provides that:

"(1) Except as authorized by this chapter, it is unlawful for any person to manufacture or deliver a controlled substance. Any person who violates this subsection with respect to:

". . .

"(b) Any other controlled substance classified in schedule I, II or III, may be fined not more than $15,000 or imprisoned not more than 5 years or both."

Sec. 161.14(4) lists the Schedule I controlled substances. In part, it lists the following as controlled substances:

"(4) Any material, compound, mixture or preparation which contains any quantity of the following hallucinogenic substances, their salts, isomers and salts of isomers, unless specifically excepted, whenever the existence of these salts, isomers and salts of isomers is possible within the specific chemical designation:

". . .

"(k) Marijuana;

". . .

"(t) Tetrahydrocannabinols."

Sec. 161.01(14) defines "marijuana" as:

". . . all parts of the plant Cannabis Sativa L., whether growing or not; the seeds thereof; the resin extracted from any part

filed in the criminal prosecution against Gerald Derenne (defendant).

The prosecution was commenced by the filing of a criminal complaint on April 24, 1978. The defendant was charged with the crime noted above. On May 25, 1978, a preliminary examination was conducted and the defendant was bound over to the circuit court for trial. A jury trial was held on September 29, 1978.

At the trial Robert Henze testified on behalf of the state. Henze stated that he had been hired by the Grant County Sheriff's Department to conduct an undercover narcotics investigation during late 1977 and early 1978. It was his job to make contact with individuals who were selling drugs in Grant county. The witness testified that in March of 1978 he was introduced to the defendant in a tavern in the city of Fennimore. This introduction was made for the purpose of purchasing a quantity of marijuana. The undercover agent related that after the introduction, he and the defendant left the tavern and went to the defendant's car. While inside the car the defendant gave the agent a "cellophane bag containing a green, vegetable material substance." In return, the defendant was paid $35.

The state also introduced the testimony of John Nied, a drug identification analyst employed by the Wisconsin State Crime Laboratory. Nied testified that he received a sample of green vegetable-like material from the Grant County Sheriff's Department. This vegetable-like material was the same that was delivered to Robert

of the plant; and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin. It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil or cake or the sterilized seed of the plant which is incapable of germination."

Henze in March of 1978.[2] The analyst testified that he performed a series of tests on the sample and that based upon these tests he was of the opinion that the sample material contained tetrahydrocannabinols (THC).

After the drug analyst completed his testimony the state rested. At that time the defense moved for a dismissal of the proceedings. It was argued that the defendant was charged with delivery of THC as prohibited by sec. 161.14(4)(t), Stats.

The defendant argued that this section proscribed only *synthetic* THC and that a proper charge for delivery of *organic* THC would have referred to the controlled substance "marijuana" as listed at sec. 161.14(4)(k), Stats. Because the proof clearly demonstrated that the THC delivered by the defendant was organically derived, it was argued to the trial court that the state failed to prove the crime charged, *i.e.*, delivery of synthetic THC. The trial judge denied the motion.

As a part of his defense the defendant attempted to introduce evidence to demonstrate that there was a difference between synthetic and natural THC and that the tests performed by the state's analyst were inadequate to distinguish between the two. The trial court, however, consistently excluded such evidence. Appropriate offers of proof were thereafter introduced.

At the close of all the evidence the defendant moved for a directed verdict of acquittal. The motion was denied. The matter was submitted to the jury, and a verdict of guilty was returned.

On appeal the defendant renewed his claim that the charge of delivery of THC was not proven by sufficient evidence. The court of appeals held in favor of the defendant. The court concluded that in light of the legislative history of the drug control laws adopted by the

---

[2] Appropriate chain of custody evidence was introduced by the prosecution to establish this fact.

United States Congress and the State of Wisconsin, the term "tetrahydrocannabinols" contained within sec. 161.-14(4), Stats., was intended to embrace only synthetic THC. It was held that the state failed to meet its burden because the evidence indicated that marijuana, and not synthetic THC, was delivered by the defendant. In its unpublished opinion,[3] the court reversed the defendant's judgment of conviction.

Although couched in terms of the sufficiency of evidence, the single, basic issue which must be decided in this case is whether the term "tetrahydrocannabinols" in sec. 161.14(4)(t), Stats., refers exclusively to synthetic THC or whether it encompasses both man-made and organic THC. If the term "tetrahydrocannabinols" refers only to synthetic THC, then the state failed to demonstrate that such a controlled substance was delivered by the defendant, and the decision of the court of appeals reversing the conviction must be affirmed.

Sec. 161.41(1)(b), Stats., provides that it is unlawful for any person to manufacture or deliver a Schedule I controlled substance. Sec. 161.14 lists the Schedule I controlled substances. Two of these drugs are described as follows:

(4) Any material, compound, mixture or preparation which contains any quantity of the following hallucinogenic substances, their salts, isomers and salts of isomers, unless specifically excepted, whenever the existence of these salts, isomers and salts of isomers is possible within the specific chemical designation:

". . .

"(k) Marijuana;

". . .

"(t) Tetrahydrocannabinols."

The defendant's argument focuses on the fact that Schedule I includes both THC and marijuana. It is ar-

---

[3] Judge Bablitch filed a dissenting opinion.

gued that marijuana *is* THC in a natural state and that to read "tetrahydrocannabinols" in sec. 161.14(4)(t), Stats., to include synthetic and natural THC would render the prohibition against marijuana a meaningless part of the statute. It is contended that the use of the terms "marijuana" and "tetrahydrocannabinols" in the same section makes the latter term ambiguous.

It is next argued that since the statute is ambiguous it is proper to look to the legislative history and intent of ch. 161. The defendant directs our attention to the federal law as it appears in Title 21 of the United States Code and in the federal regulations at 21 CFR 1308.11. It is contended that the federal drug law traditionally prohibited only marijuana, but when science developed a synthetic equivalent of the psychoactive component of marijuana, *i.e.*, THC, the term "tetrahydrocannabinols" was added to the list of proscribed substances. When the federal authorities enacted the Comprehensive Drug Abuse Prevention Act of 1970, 21 U.S.C., sec. 801 *et seq.*, both marijuana and THC were listed as Schedule I controlled substances. *See* 21 U.S.C., sec. 812(c). Pursuant to the authority granted under sec. 811 of Title 21, the attorney general defined "tetrahydrocannabinols" as the

"Synthetic equivalents of the substances contained in the plant, or in the resinous extractives of *Cannabis,* sp. and/or synthetic substances, derivatives, and their isomers with similar chemical structure and pharmacological activity. . . ." 21 CFR 1308.11(d)(20).

This administrative classification of THC is offered to support the claim that the Schedule I substance "tetrahydrocannabinols" includes only synthetic THC.

The defendant argues that ch. 161, Stats., is "virtually identical" to the federal controlled substances act,[4]

---

[4] *See Berg v. State,* 63 Wis.2d 228, 235–36, 216 N.W.2d 521 (1974). Our statute derives from the Uniform Controlled Substances Act. The Uniform Act was drafted to complement federal drug control legislation. *Id.* at 236, n. 7–8.

and therefore we should adopt the meaning of THC as defined by federal law.

We do not accept the defendant's arguments. In construing a statute, our first recourse is to the language of the statute itself, and we must interpret sec. 161.14 (4), Stats., on the basis of the plain meaning of its terms. If the meaning of the statute is clear and unambiguous on its face, then resort to extrinsic aids for the purpose of statutory construction is improper. *Milwaukee v. Lindner*, 98 Wis.2d 624, 632, 297 N.W.2d 828 (1980); *Wisconsin Bankers Ass'n v. Mut. Savings & Loan,* 96 Wis.2d 438, 450, 291 N.W.2d 869 (1980).

We find no ambiguity on the face of the statute. Sec. 161.14(4), Stats., lists both marijuana and THC as controlled substances. There is nothing in the terms of the statute which limits the substance THC to synthetically derived tetrahydrocannabinol. A statute or a portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses. *Milwaukee v. Lindner, supra,* 98 Wis.2d at 632; *Wirth v. Ehly,* 93 Wis.2d 433, 441, 287 N.W.2d 140 (1979). Upon a reading of sec. 161.14(4), Stats., a reasonably well-informed person would conclude that both THC and marijuana were proscribed substances; no ambiguity would be detected.

It may well be that—as urged by the defendant—a thorough review of legislative history and legislative intent which underpin the addition of THC to the list of controlled substances would reveal that the subjective purpose of the drafters was to proscribe synthetic THC. An awareness of such an intent might lead one to conclude that sec. 161.14(4)(t), Stats., was unclear and ambiguous. It is the rule, however, that reference to legislative history cannot be made for the purpose of

rendering a statute ambiguous. *Aparacor, Inc. v. ILHR Department,* 97 Wis.2d 399, 403, 293 N.W.2d 545 (1980). When legislators enact a law which, as in this case, is cast in objective terms which are not susceptible to more than one meaning, the subjective intent of the lawmakers is not controlling.

We note that our construction of sec. 161.14(4), Stats., results in some "statutory overlap." Under our view, organically derived THC is prohibited by both sub. (k) ("marijuana"), and sub. (t) ("tetrahydrocannabinols") of sec. 161.14(4). Contrary to the argument of the defendant, however, this construction does not render the term "marijuana" meaningless. Marijuana is defined at sec. 161.01(14) as

". . . all parts of the plant Cannabis Sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin. It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stalks (except the resin extracted therefrom), fiber, oil or cake or the sterilized seed of the plant which is incapable of germination."

As set forth in a number of chemical dictionaries, the *resinous exudate of marijuana contains several chemicals, only one of which is THC.*[5] Possession of a substance containing any of these chemicals would be contrary to law. *See Berg v. State,* 63 Wis.2d 228, 238–39, 216 N.W.2d 521 (1974). In sum, although there is some

---

[5] The chemical constituents of marijuana or Cannabis Sativa L. are tetrahydrocannabinols, cannabinol and cannabidiol. *The Merck Index,* pp. 1747–48 (9th ed.) (1976). *See also* Hawley, *The Condensed Chemical Dictionary,* p. 848 (9th ed.) (1977); Miall and Sharp, *A New Dictionary of Chemistry,* (4th ed.) (1968).

overlap in the substances prohibited by sec. 161.14(4), the term "marijuana" set forth in sub. (k) of sec. 161.-14(4) includes substances which are not included in sub. (t).

The defendant has cited several decisions from other jurisdictions which hold that the term "tetrahydrocannabinols" as contained within similar drug control laws[6] refers only to synthetic THC. *See United States v. Wuco,* 535 F.2d 1200 (9th Cir. 1976) ; *Aycock v. State,* 146 Ga. App. 489, 246 S.E.2d 489 (1978) ; *People v. Campbell,* 72 Mich. App. 411, 249 N.W.2d 870 (1977). These cases are not persuasive. In *United States v. Wuco, supra,* the court was bound by the federal regulation which clearly does apply only to synthetic THC. *See* 21 CFR 1308.-11(d)(2). In both *Aycock v. State, supra,* and *People v. Campbell, supra,* the courts were faced with a situation where offenses involving marijuana were punished differently from offenses relating to THC. In such a set of circumstances, it is not unreasonable to look behind the face of the statute to determine the difference between THC and marijuana as intended by the legislature. The Wisconsin statute offers no similar justification for looking beyond the terms of the statute. For the purposes of punishment under ch. 161, Stats., THC and marijuana are treated identically. *See* sec. 161.41 *et seq.,* Stats.

In this case the state filed an information which alleged the delivery of tetrahydrocannabinol, a Schedule I controlled substance. The state proved at trial that the vegetable-like material sold by the defendant to the narcotics agent contained THC. The plain language of sec.

---

[6] Wisconsin has enacted a drug control law which is modeled after the Uniform Controlled Substances Act. *See Berg v. State, supra,* 63 Wis.2d at 236, n. 7. Other jurisdictions have also enacted this model legislation.

161.14 (4) (t) includes THC as a controlled substance. An irregularity in the proceedings arises only if we read into the statute extra language which limits the term "tetrahydrocannabinols" to synthetic THC. Since this qualifies the language of the statute to an extent not warranted by its plain terms, we decline to accept the defendant's arguments.

The decision of the court of appeals was such that the court was not required to reach all of the issues raised on appeal. Since we now reverse its decision, this matter must be remanded to the court of appeals for consideration of those unresolved issues.

*By the Court.*—The decision of the Court of Appeals is reversed and the cause is remanded to the Court of Appeals for consideration of unresolved issues properly raised in the initial appeal.