IN the MATTER OF Theodora ATHANS:
MILWAUKEE COUNTY COMBINED COMMUNITY
SERVICES BOARD, Appellant,

V.

Theodora ATHANS, Respondent.†
[Case No. 81–1288.]

IN the MATTER OF Gerald HASKINS:
MILWAUKEE COUNTY COMBINED COMMUNITY
SERVICES BOARD, Appellant,

V.

Gerald HASKINS, Respondent.†
[Case No. 81–1290.]

Court of Appeals

*Nos. 81–1288, 81–1290. Submitted on briefs February 17, 1982.—
Decided April 21, 1982.*
(Also reported in 320 N.W.2d 30.)

† Petition to review denied. ABRAHAMSON, J., took not part.

332

For the appellant the cause was submitted on the brief of *George E. Rice,* acting corporation counsel, and *Robert A. McKnight,* principal assistant corporation counsel.

For the respondents the cause was submitted on the brief of *Thomas K. Zander,* chief attorney, office of state public defender, mental health division.

Before Decker, C.J., Moser, P.J., and Randa, J.

RANDA, J. Milwaukee County Combined Community Services Board (Board) petitioned the trial court for the involuntary commitment of Theodora Athans (Athans) and Gerald Haskins (Haskins) pursuant to sec. 51.20, Stats. The trial court held final hearings in

both cases. Sec. 51.20 (10). The trial court found Athans mentally ill and evincing a danger to herself, but not a propert subject for treatment. The trial court found Haskins developmentally disabled but not a proper subject for treatment. The trial court ordered both petitions dismissed. We affirm.

## THEODORA ATHANS

Dr. Kevin Kennedy, a psychiatrist, testified that he examined Athans on June 22, 1981, and reviewed her current hospitalization charts. Dr. Kennedy concluded that Athans suffered from schizophrenia, chronic paranoid type, but that Athans was not a proper subject for treatment because rehabilitation in her case was not possible. Dr. Kennedy testified that Athans was not amenable to treatment and that hospitalization would only be custodial in nature and would be detrimental to Athans' ability to survive in the community.

Dr. Andrew Kane, a psychologist, testified that he examined Athans on June 22, 1981, and also reviewed her current hospitalization charts. Dr. Kane testified that he had examined Athans on four prior occasions in a thirty-month period before the present proceedings. He concluded that Athans was acutely and chronically psychotic but that Athans was not rehabilitable and thus not a proper subject for treatment. Dr. Kane testified that, based upon his present and prior examinations of Athans, and upon conference with the nursing and the psychiatric staff of the Milwaukee County Mental Health Complex, Athans would not change her delusional scheme no matter what the treatment attempted, including sedation.

Both Drs. Kennedy and Kane testified that Athans was not violent. Both agreed Athans was physically sound, dressed well and appeared to have sound nutrition. The

doctors also agreed that Athans was able to survive on her own.

## GERALD HASKINS

Dr. Kennedy testified that he examined Haskins on April 14 and 28, 1981, and reviewed Haskins' current hospitalization charts. Dr. Kennedy concluded that Haskins was developmentally disabled, but not mentally ill, habilitable, but not rehabilitable, and thus not a proper subject for treatment. Secs. 51.01(5)(a), (13)(b), (17), and 51.20(1)(a)1, Stats. Dr. Kennedy also testified that Haskins suffered from a compulsive disorder (pyromania) which did not constitute a mental illness.

Dr. Kane testified that he examined Haskins on April 14 and 27, 1981, and reviewed Haskins' current hospitalization charts. Dr. Kane testified that Haskins was developmentally disabled, not mentally ill, habilitable but not rehabilitable, and thus, not a proper subject for treatment. Dr. Kane also testified that Haskins suffered from a compulsive disorder (pyromania) which is not a mental illness.

Both doctors testified that the terms rehabilitation and habilitation had specific clinical meanings. Habilitation means the maximizing of an individual's functioning and the maintenance of the individual at that maximum level. Rehabilitation means returning an individual to a previous level of functioning which had decreased because of an acute disorder.

Section 51.01(17), Stats., defines treatment in terms of rehabilitation only. Two issues are thus presented by these appeals: (1) whether treatment as defined in sec. 51.01(17), Stats., includes habilitation as well as rehabilitation, and (2) whether the findings of the trial court are against the great weight and clear preponderance of the evidence.

Section 51.01(17), Stats., defines the word treatment as "those psychological, educational, social, chemical, medical or somatic techniques designed to bring about rehabilitation of a mentally ill, alcoholic, drug dependent or developmentally disabled person." The Board argues that we must broadly construe the term rehabilitation to include within it habilitation in order to carry out the intent of the legislature as embodied in ch 51. Only if rehabilitation includes habilitation may we say that Athans and Haskins are proper subjects for treatment.

Construction of a statute is a question of law. As to questions of law, this court is not required to give special deference to the trial court's determination. *Hucko v. Jos. Schlitz Brewing Co.,* 100 Wis. 2d 372, 376, 302 N.W.2d 68, 71 (Ct. App. 1981). The primary source for the construction of a statute is the statute's language. *State v. Derenne,* 102 Wis. 2d 38, 45, 306 N.W.2d 12, 15 (1981). If the language has a meaning that is clearly understood, that meaning must be given to the language. *Hucko, supra,* 100 Wis. 2d 372 at 376, 302 N.W.2d at 71. If the meaning of a statute is unambiguous on its face, the court may not resort to extrinsic aids to determine the meaning. *Derenne, supra,* 102 Wis. 2d at 45, 306 N.W.2d at 15. 2A C. Sands, *Statutes and Statutory Construction* § 46.01 at 48–49 (4th ed. 1973). An ambiguity exists when reasonable persons may assign to the statutory language two or more meanings. *Derenne, supra,* 102 Wis. 2d at 45, 306 N.W.2d at 15.

This court must conclude that the term rehabilitation is not an ambiguous term with two or more meanings, of which one meaning might include habilitation. In sec. 51.437(1), Stats., the terms habilitation and rehabilitation are juxtaposed, indicating that the legislature understood the difference between the two words. The

United States Department of Health, Education and Welfare has also recognized the difference in the two words. Services which are rehabilitable are those "which ameliorate impairments and facilitate an individual's capability to function," and habilitative services are those "which assist an impaired person's ability to live in the community." United States Department of Health, Education and Welfare, *Health Planning Taxonomy* 4 (1979). We conclude that the term rehabilitation may not be statutorily construed to include habilitation. The plain meaning of rehabilitation as defined above is the only meaning we may give the word.

The second issue is whether the trial court's findings were against the great weight and clear preponderance of the evidence. As to the rules applicable to the review of a circuit court's finding of fact, we refer to *Klein-Dickert Oshkosh, Inc. v. Frontier Mortgage Corp.*, 93 Wis. 2d 660, 663, 287 N.W.2d 742, 743 (1980), where our supreme court stated:

We believe it is well-established that findings of the trial court will not be upset on appeal unless they are clearly erroneous and against the great weight and clear preponderance of the evidence. The evidence supporting the findings of the trial court need not constitute the great weight or clear preponderance of the evidence and reversal is not dictated if there is evidence to support a contrary finding. If there is to be a reversal on appeal, the evidence to support such a result must itself constitute the great weight and clear preponderance of the evidence. Furthermore, when the trial judge acts as the finder of fact, he is the ultimate and final arbiter of the credibility of witnesses. When more than one inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact. *Bank of Sun Prairie v. Opstein*, 86 Wis. 2d 669, 676, 273 N.W.2d 279 (1979), and cases cited therein.

The appellant in these cases had to prove by clear and convincing evidence that Athans and Haskins should be

involuntarily committed. Sec. 51.20(13)(e), Stats. This means that appellant had to prove by clear and convincing evidence that Athans and Haskins were proper subjects for treatment. Both experts at each commitment hearing testified that Athans and Haskins were habilitable but not rehabilitable. Since we have invoked the plain meaning rule to conclude that rehabilitation does not include habilitation, Athans and Haskins were not shown to be proper subjects for treatment.

The findings of the trial court are also supported by the legislative scheme concerning involuntary civil commitment. Chapter 51 provides for active treatment for those who are proper subjects for treatment, and sec. 55.06, Stats., provides for residential care and custody of those persons with mental disabilities that are likely to be permanent. The distinction between these two statutes must be recognized and maintained.

*By the Court.*—Orders affirmed.