IT'S IN THE CARDS, INC. and Jeff Meneau, Plaintiffs-Appellants,

v.

Rosario FUSCHETTO, d/b/a Triple Play Collectibles, Defendant-Respondent.†

Court of Appeals

*No. 94–3162. Submitted on briefs April 3, 1995.—Decided April 11, 1995.*

(Also reported in 535 N.W.2d 11.)

————

†Petition to review denied.

————

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Greg P. Curtis* of *Herrling, Clark, Hartzheim & Siddall, Ltd.* of Appleton.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Paul E. Schwemer* of *Spindler, Roitburd, Schwemer & Griner* of Brookfield.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Jeff Meneau and It's In The Cards, Inc., appeal a summary judgment granted in favor of Rosario Fuschetto, d/b/a Triple Play Collectibles. Meneau contends that posting messages to a bulletin board on the SportsNet on-line service is not a "periodical" under § 895.05(2), STATS.,[1] and thus no notice to Fuschetto requesting a retraction is necessary before

---

[1] Section 895.05(2), STATS., reads:

> Before any civil action shall be commenced on account of any libelous publication in any newspaper, magazine or *periodical*, the libeled person shall first give those alleged to be responsible or liable for the publication a reasonable opportunity to correct the libelous matter. Such opportunity shall be given by notice in writing specifying the *article* and the statements therein which are claimed to be false and defamatory and a statement of what are claimed to be the true facts. The notice may also state the sources, if any, from which the true facts may be ascertained with definiteness and certainty. The *first issue published* after the expiration of one week from the receipt of such notice shall be within a reasonable time for correction. To the extent that the true facts are, with reasonable diligence, ascertainable with definiteness and certainty, only a retraction shall constitute a correction; otherwise the publication of the libeled person's statement of the true facts, or so much thereof as shall not be libelous of another, scurrilous, or otherwise improper for publication, published as the libeled person's statement, shall constitute a correction within the meaning of this section. A correction, timely published, without comment, in a position and type as prominent as the alleged libel, shall constitute a defense against the recovery of any damages except actual damages, as well as being competent and material in mitigation of

bringing suit under this statute. Because we conclude that bulletin board postings on the SportsNet service are not periodicals under § 895.05(2), we reverse and remand for further proceedings.

This action arises out of a series of communications exchanged between Meneau, a Wisconsin resident, and Fuschetto, a resident of New York, by telephone and via SportsNet. SportsNet is a national computer network service whereby sports memorabilia dealers may communicate to purchase and sell merchandise.[2] There are two features on SportsNet, mailbox and bulletin board. The mailbox feature is personal in nature and allows a person to send messages exclusively to another SportsNet user, similar to electronic mail (e-mail). The bulletin board feature allows a person to send messages to all members accessing SportsNet.

Fuschetto and Meneau communicated with each other over both the bulletin board and mailbox features of SportsNet, as well as on the telephone. In the course of these conversations, it was agreed that Meneau would visit Fuschetto in New York in January 1994. After agreeing to Meneau's visit, Fuschetto and his wife were afflicted with mononucleosis. Via the computerized mailbox function, Fuschetto notified Meneau of his illness and asked Meneau if he could postpone his

---

actual damages to the extent the correction published does so mitigate them. (Emphasis added.)

[2] The on-line service, SportsNet, is not the Internet, but is one network service. The Internet is a network of thousands of independent networks, containing millions of host computers that provide information services. Further, the Internet is not owned or controlled by a private company or the government. *See MTV Networks v. Curry,* 867 F. Supp. 202, 204 n.1 (S.D. N.Y. 1994).

trip. A series of mailbox communications ensued, wherein the two started arguing over the cost of the airline tickets and tickets to a Knicks game and the David Letterman show that were purchased for Meneau's visit.

Consequently, Fuschetto posted a note on the bulletin board feature, accessible to all subscribers of SportsNet, explaining his arguments with Meneau. Meneau alleges that Fuschetto's communications made over the bulletin board features were communications which form the basis for defamation, negligence and tortious interference with business relations claims. Fuschetto filed a motion for summary judgment asserting that Meneau failed to comply with § 895.05(2), STATS., the publication was not defamatory as a matter of law and the publication was true. Without deciding whether the information was defamatory, the trial court granted the motion on the grounds that § 895.05(2) applied, specifically, the bulletin board communications were a "periodical" under the statute, and thus a demand for retraction was required before Meneau could bring suit under the statute. Meneau appeals.

The application of a statute to undisputed facts is a question of law that we review independently of the trial court's determinations. *State v. Pham*, 137 Wis. 2d 31, 33-34, 403 N.W.2d 35, 36 (1987). The purpose of the rules of statutory construction is to give effect to the legislative intent. *Id.* at 34, 403 N.W.2d at 36. When determining legislative intent, we first examine the language of the statute itself and will only resort to extrinsic aids if the language is ambiguous. *Id.*; *In re P.A.K.*, 119 Wis. 2d 871, 879, 350 N.W.2d 677, 682 (1984). A statute is ambiguous if reasonable persons

could disagree as to its meaning; whether a statute is ambiguous is a question of law. *Pham,* 137 Wis. 2d at 34, 403 N.W.2d at 36; *P.A.K.,* 119 Wis. 2d at 878-79, 350 N.W.2d at 682. If the statute is unambiguous, judicial rules of construction are not warranted; thus, we must arrive at the legislature's intent by giving the language its ordinary and clear meaning. *State ex rel. Milwaukee County v. Wisconsin Council on Criminal Justice,* 73 Wis. 2d 237, 241-43, 243 N.W.2d 485, 487-88 (1976).

Under § 895.05(2), STATS., the party claiming to have been defamed in a newspaper, magazine or periodical must give the other party an opportunity to retract the alleged libel prior to commencing suit. *Hucko v. Jos. Schlitz Brewing Co.,* 100 Wis. 2d 372, 379-81, 302 N.W.2d 68, 73-74 (Ct. App. 1981). This condition "serves to limit damages recoverable for libel published in a newspaper, periodical, or magazine to actual damages, and may serve to mitigate the latter as well." *Id.* at 379, 302 N.W.2d at 73 (footnote omitted). This statute reflects that only certain writings will be required to be retracted; magazines, newspapers or periodicals. The parties agree that the SportsNet bulletin board function is not a newspaper or magazine, thus the sole issue on appeal is whether the computerized bulletin board is a "periodical" under § 895.05(2).

■

There are no Wisconsin cases that interpret the word "periodical" in the context of § 895.05(2), STATS. Thus, our first step is to examine the language of the statute itself to discern if it is ambiguous. The relevant language from § 895.05(2) states: "Before any civil action shall be commenced on account of any libelous publication in any newspaper, magazine or periodical, the libeled person shall first give those alleged to be

responsible or liable for the publication a reasonable opportunity to correct the libelous matter." In WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1680 (Unabr. 1976), periodical is defined as "a magazine or other publication of which the issues appear at stated or regular intervals." Periodicals are publications that appear on a regular basis, not infrequently or intermittently. We conclude that the term "periodical" is not susceptible to two or more reasonable meanings, and thus is not ambiguous. Thus, we arrive at the legislative intent by giving the word "periodical" its ordinary meaning.

■

Posting a message to the SportsNet bulletin board is a random communication of computerized messages analogous to posting a written notice on a public bulletin board, not a publication that appears at regular intervals. SportsNet users place their messages on the bulletin board at any time and there are no set time limits as to when the messages are read. The messages are not done on a monthly, weekly or daily basis, but are sporadic as to whenever a SportsNet user desires to write a communication. Thus, we conclude that these messages on the bulletin board are not periodicals under the ordinary meaning of the term.

■

Furthermore, the statute requires retractions for specified writings; magazines, newspapers and periodicals. Writings such as personal letters, billboards and signs are not included, therefore, the statute is not inclusive of all forms of alleged libel. Section 895.05(2), STATS. Additionally, in *Hucko*, 100 Wis. 2d at 386, 302 N.W.2d at 76, we held that § 895.05(2) relates only to libelous publications in print media, not broadcast

media. The nature of bulletin board postings on computer network services cannot be classified as print.

Additionally, subsec. (2) of § 895.05, STATS., was repealed in 1951 and reenacted in its present form, years before cyberspace was envisioned. The magnitude of computer networks and the consequent communications possibilities were non-existent at the time this statute was enacted. Applying the present libel laws to cyberspace or computer networks entails rewriting statutes that were written to manage physical, printed objects, not computer networks or services. Consequently, it is for the legislature to address the increasingly common phenomenon of libel and defamation on the information superhighway.[3]

The rate at which technological developments are growing coupled with the complexity of technology is beyond many laypersons' ken. A uniform system of managing information technology and computer networks is needed to cope with the impact of the information age. It is the responsibility of the legislature to manage this technology and to change or amend the statutes as needed. Therefore, we conclude that extending the definition of "periodical" under § 895.05(2), STATS., to include network bulletin board communications on the SportsNet computer service is judicial legislation in which we will not indulge.

---

[3] We also recognize other legal ramifications involved in our society's technological growth including: high tech crimes, consumer protection, freedom of speech issues and intellectual property rights. For an insightful look into the legal ramifications of technological advances see William S. Byassee, *Jurisdiction of Cyberspace: Applying Real World Precedent to the Virtual Community,* 30 WAKE FOREST L. REV. 197 (1995).

*By the Court.*—Judgment reversed and cause remanded for further proceedings.