¶ 50.
SHIRLEY S. ABRAHAMSON, J.
I renew my concern that the Helen E.F. case set forth a confusing and unpredictable test to interpret a "proper subject for treatment" under Chapter 51. Fond du Lac County v. Helen E.F., 2012 WI 50, 340 Wis. 2d 500, 814 N.W.2d 179. The instant opinion continues and possibly magnifies the problem.
¶ 51. In Helen E.F., this court analyzed and compared Chapters 51 and 55 of the Wisconsin Statutes. Despite the fact that Chapters 51 and 55 ostensibly serve different purposes, there is substantial overlap and similarity between some aspects of the two chapters. Helen E.F., 340 Wis. 2d 500, ¶ 45 (Abrahamson, C.J., concurring).
¶ 52. But one important and undisputed distinction between Chapters 51 and 55 is the length of the *570 treatment or commitment that each chapter provides. Mr. J. has been under Chapter 51 for almost a decade. Although an initial Chapter 51 commitment cannot exceed six months and extensions are possible, Wis. Stat. § 51.20(13)(g), Chapter 55 applies to a commitment caused by "a disability that is permanent or likely to be permanent." § 55.08(l)(d). See Helen E.F., 340 Wis. 2d 500, ¶¶ 29, 44. The majority opinion, ¶ 48 n.16, slides over this issue.
¶ 53. This distinction matters. Although both provide for involuntary commitments, Chapter 55 contains numerous additional procedures and protections for an individual subject to a long-term commitment that Chapter 51 simply doesn't.[1]
¶ 54. Because the court is faced with interpreting and applying Chapter 51 to Mr. J., I briefly restate my concerns with the Helen E.F. test.
*571 ¶ 55. Although I agree with the majority opinion that Mr. J.'s suggested revisions of the Helen E.F. test are unavailing, I remain concerned that the Helen E.F. test is also unavailing.
¶ 56. "Rehabilitation" appears to be the linchpin of this statutory definition. See Milwaukee Cty. Combined Cmty. Servs. Bd. v. Athans, 107 Wis. 2d 331, 334-36, 320 N.W.2d 30 (Ct. App. 1982).
¶ 57. The line between controlling activity versus controlling the symptoms and the disorder—that is, whether an individual is habilitable or rehabilitable—is not any brighter or clearer to me in the instant opinion than in Helen E.F..
¶ 58. Unfortunately, the court maintains the confusing test it adopted in Helen E.F., failing to differentiate Chapter 51 commitments from Chapter 55 commitments.
¶ 59. I renew my suggestion that "it may be time for the legislature to reassess the goals and intended scope of the two chapters." Helen E.F., 2012 WI 50, ¶ 56 (Abrahamson, C.J., concurring) (citing Wis. Stat. §§ 13.83(1)(c), 13.92(2)(j)).
f 60. For these reasons, I write separately.
¶ 61. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

 See also Wisconsin Coalition for Advocacy, Rights & Reality II, An Action Guide to the Rights of People with Disabilities in Wisconsin 342 (2001):
In general, Chapter 55 is used for long-term placement or services while Chapter 55 is used for more time-limited treatment.
[[Image here]]
This is a helpful way to separate the two statutes, but there will be many situations where they overlap. For example, a person with a permanent disability like mental retardation would ordinarily receive services under Chapter 55, but could also have a mental health crisis which would be handled under Chapter 55 with either voluntary or involuntary treatment. Persons with chronic mental illness who are incompetent and have a guardian can probably be served under either Chapter 55 or 55. Some younger persons with severe mental health needs who live in group homes or in their own apartments with intensive services such as Community Support Programs (CSP) may be under Chapter 55 orders. Others in exactly the same situation are under Chapter 55 commitments which are renewed year after year. This varies by county.