MEIER and wife, Respondents, v. MEURER and others, Appellants.

*September 8—October 6, 1959.*

For the appellants there was a brief and oral argument by *Woodrow J. Bach* of Milwaukee, for the Meurers, and *Carlton Roffa* of Milwaukee, for Samuel J. Ansfield, and *Arnold J. Ansfield* of Milwaukee of counsel.

For the respondents there was a brief and oral argument by *John W. Emmerling* of Milwaukee.

FAIRCHILD, J.   It is clear from the complaint that the publications complained of are true in large part. Plaintiffs assert, however, that the handbill and advertisement are capable of a meaning which is false and actionable, and that it is for the jury to decide whether the false and actionable meaning was conveyed to the readers.

Admittedly, there are several omissions or inaccuracies. The publications do not state who "ordered" the sale. They give the impression that all the items of equipment listed formerly belonged to Meier Bakery, although some of them

did not. They may imply that the premises referred to were still occupied or controlled by Meier Bakery, although the situation had changed a few weeks previously. We deem these details unimportant, however, unless the statements as a whole are capable of a false and defamatory meaning. In this state, if a statement be substantially true it cannot be the basis for a civil action for libel. *Williams v. Journal Co.* (1933), 211 Wis. 362, 370, 247 N. W. 435; *Smith v. Journal Co.* (1955), 271 Wis. 384, 389, 73 N. W. (2d) 429. Plaintiffs have alleged no special damages arising from the publication of the specific inaccuracies referred to.

Plaintiffs argue that the publications were capable of being understood as stating that the sale was ordered by a court in a proceeding in which Meier Bakery was found bankrupt or insolvent, or that the property of Meier Bakery had been transferred to someone else by judicial process, or otherwise, as the result of default in some obligation to its creditors. The duty of the court at this stage is to determine whether the language used is reasonably capable of conveying a defamatory meaning to the ordinary mind and whether the meaning ascribed by plaintiffs is a natural and proper one. *Woods v. Sentinel-News Co.* (1935), 216 Wis. 627, 629, 258 N. W. 166; *Judevine v. Benzies-Montanye Fuel & Whse. Co.* (1936), 222 Wis. 512, 517, 269 N. W. 295. "The words must be construed in the plain and popular sense in which they would naturally be understood." *Leuch v. Berger* (1915), 161 Wis. 564, 571, 155 N. W. 148. The words used must be "reasonably interpreted." *Dabold v. Chronicle Publishing Co.* (1900), 107 Wis. 357, 362, 83 N. W. 639.

In the case before us, would it be a reasonable interpretation of the publications that the Meier Bakery was bankrupt, insolvent, or had defaulted on its obligations? There is no reference in them to any court or proceeding in court nor to any sort of seizure or foreclosure. It is common knowl-

edge that auction sales are held for many purposes in addition to the liquidation of estates of bankrupts and insolvents, and that the sales which result from many sorts of judicial proceedings are held by the sheriff. The publications make it quite plain that defendant Ansfield is in business as an auctioneer, liquidator, and appraiser and in no way suggest that he has any official capacity. The verb "order" does not exclusively mean "command" but also means "direct." Webster's New International Dictionary (2d ed.). The word is commonly used with respect to the directions given by employers and buyers of goods and services, as well as with respect to the directions or commands given by courts or officers. The language of the handbill and advertisement could not, in our opinion, be reasonably understood as a statement that the sale occurred because Meier Bakery had become bankrupt or insolvent or had defaulted on its obligations.

As we have stated, plaintiffs allege that the words of the publications did imply bankruptcy, insolvency, or default on obligations, but the demurrer only admits that the words were published as alleged, not the meaning which the plaintiffs have ascribed to them. *Kassowitz v. Sentinel Co.* (1938), 226 Wis. 468, 476, 277 N. W. 177.

Plaintiffs allege that defendants had no authority to use the Meier name. Unauthorized public use of another's name does not give rise to a cause of action for libel, and in several cases this court has decided that a cause of action for invasion of a right of privacy does not exist in this state. *Judevine v. Benzies-Montanye Fuel & Whse. Co., supra; Yoeckel v. Samonig* (1956), 272 Wis. 430, 75 N. W. (2d) 925.

We are mindful of plaintiffs' claim that the placement of an item in a publication may be considered in determining its libelous character. 33 Am. Jur., Libel and Slander, p. 100, sec. 87. The advertisement appearing immediately above the one here involved was an announcement of a bankruptcy

sale. In it, however, the owner of the property was referred to as bankrupt and the court ordering the sale was named. The advertisement second above, and the only other which plaintiffs incorporated in their complaint, announced a sale which obviously was not based on bankruptcy, insolvency, or default in paying obligations. We conclude that the placement of the advertisement with other announcements of public auction sales and below the two announcements of sales by the same auctioneer would not supply a basis for interpreting the announcement as meaning that Meier Bakery was bankrupt or insolvent.

Thus we conclude that the publications were not capable of the meanings alleged which would have reflected upon the credit standing of plaintiffs and that the complaint stated no cause of action. This conclusion makes it unnecessary to consider defendants' argument that plaintiffs would also have needed to allege that they are presently engaged in business in order to state a cause of action for a libel affecting their credit standing.

*By the Court.*—Order reversed, and cause remanded with directions to sustain the demurrer and dismiss the complaint.