**David TANNENBAUM, Plaintiff,**

v.

**Karl E. FOERSTER, Defendant.**

**No. 86–C–317.**

United States District Court,
E.D. Wisconsin.

Nov. 21, 1986.

David Tannenbaum, pro se.

Donald E. Mayew, Kenosha, Wis., for defendant.

## DECISION AND ORDER

CURRAN, District Judge.

David Tannenbaum, the plaintiff in the above-captioned case, is seeking $100,000 in compensatory and punitive damages from defendant Karl E. Foerster (Tannenbaum's brother-in-law) for two counts of defamation. The plaintiff is a citizen of Illinois and the defendant is a citizen of Wisconsin, so this court has diversity jurisdiction over the subject matter of the action. *See* 28 U.S.C. § 1332(a). The defendant has answered and after the close of discovery moved the court for an order granting summary judgment in his favor on the

ground that the alleged defamatory statements uttered by the defendant are privileged, thereby making the defendant immune from civil liability for defamation. *See* Federal Rule of Civil Procedure 56. In addition, the defendant has moved for judgment on the pleadings on Count II of the complaint on the ground that this count fails to state a claim upon which relief can be granted. *See* Federal Rule of Civil Procedure 12(c) & (h)(2).

In his First Amended Complaint the plaintiff alleges that he was employed as an instructor at the College of Lake County, Illinois. He says he is also a registered professional engineer and a licensed architect. On December 11, 1985, defendant Foerster wrote and mailed a letter from Kenosha, Wisconsin, to a member of the Illinois state senate, among others, in which he accused Tannenbaum of "criminal conduct." In the opinion of the plaintiff, the letter also accused his wife, Rachel Foerster Tannenbaum, of financial misconduct. The letter in question states, in part:

Adeline J. Geo-Karis

P. O. Box 33

Zion, IL 60099

Dear Adeline:

Please find enclosed a letter which I received December 9 from Rachel. The phone conversation which she mentions was on December 4, and was hardly a conversation. I had expressed to her our desires regarding Dad's home at 2901 Bethel Blvd. and her response was very emphatically that she "didn't have time to talk to me," and hung up. This is not the first time she has hung up on us recently. You mentioned that Robin, the Doctor, wanted to get an attorney after you. In fact, it was to get an attorney after Rachel for refusing to communicate with the rest of us. Your secretary misunderstood Robin in his state of frustration.

Therefore, the only course of action Rachel leaves open to me, as Co-executor, to ensure that the four of us have an equal say in the matters of our father's estate, is to communicate directly with you the

concerns that we have. It is all of our desire to get our father's estate together as soon as possible. None of us wants to have any long-term business association with Rachel.

Our present points of concern are:

1. That the property at 2901 Bethel Blvd. be sold ASAP, and not be rented. We want you to please advise the real estate agent of our desires.

2. That an audit of our father's bank records be brought forth from January 1, 1985 through November 29, 1985.

3. An accounting of all monies spent from October 4, 1985 through November 29, 1985 be made available to all of us.

4. That dad's car, a 1979 Buick Century, four-door, six cylinder, be appraised at once and then be made available to Tertia Foerster, Milwaukee. If she wants the car, its wholesale value to be deducted from her portion of dad's estate.

5. That David Tannenbaum be instructed that he is not to interfer [sic] with any matters concerning, or relating to the estate of Carl E. Foerster (outside of the fact that he is married to Rachel.) Our concern is as follows: On the day of dad's funeral he called Congdon's Funeral Home in the morning and talked to Artie Congdon. He told him he was an attorney and that in no uncertain terms was dad's casket to be open, and that if it was, he would sue the funeral home. If in fact dad's casket had been open, it would have been because of dad's desires, and not Rachel's, mine or anyone else. Dad had asked me, when we talked about his funeral, that if he looked really bad to keep the casket closed. I had already talked to Rachel on Sunday, December 1, and said I didn't think it would be open, considering how dad looked the last time I saw him. This was confirmed when Tertia and I went to the funeral home early and viewed dad. He did not look that bad, but to appease Rachel, we asked Artie to leave the casket closed. It was at that time Artie told us of his phone conversation with Mr. Tannenbaum.

First Amended Complaint at Exhibits A1 & A2. The record reveals that the addressee of this letter, Adeline J. Geo-Karis, whom Tannenbaum identifies as an Illinois state senator, was the attorney probating the estate of Foerster's father, Carl E. Foerster. Events surrounding the death, funeral and probate of the estate of Carl E. Foerster apparently precipitated the plaintiff's grievances.

■ Because this is a diversity action, the law of the forum applies. *See Thompson v. Kiekhaefer,* 71 F.R.D. 115, 116 (E.D. Wis.1976). Under the law of Wisconsin, the elements of a defamatory communication are: (1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the person defamed, and (3) the communication is unprivileged and tends to harm one's reputation so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her. *See Stoll v. Adriansen,* 122 Wis.2d 503, 517, 362 N.W.2d 182, 189 (Ct.App.1984). In this case the defendant admits that there was a communication—a letter he sent to the lawyer handling his father's estate and to the other heirs, his brothers and sisters.

In moving for judgment on the pleadings, the defendant argues that the references to Tannenbaum's wife, Rachel Foerster Tannenbaum, in the letter are not capable of a defamatory meaning as a matter of law "since it in no way harms the reputation of the plaintiff as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Brief in Support of Defendant's Motion for Judgment on the Readings [sic] Pursuant to Fed.R.Civ.P. 12(c) and 12(h)(2) at 2. The test for a defamatory meaning is "whether the language used is reasonably capable of conveying a defamatory meaning to the ordinary mind and whether the meaning ascribed by plaintiffs is a natural and proper one." *Meier v. Meurer,* 8 Wis.2d 24, 29, 98 N.W.2d 411, 414 (1959). The words must be construed in their plain and popular sense and will not be given a strained or unnatural construc-

tion. *Id.* The defendant points out that in his letter he merely asked the lawyer for an audit of his father's bank records and an accounting of all monies spent.

■ The court agrees with the defendant that the letter cannot be construed as meaning that Rachel Foerster Tannenbaum was culpable of financial misconduct. There is no connection made between the request for the audit and any action on her part. Thus Count II will be dismissed for failure to state a claim upon which relief can be granted. *See* Federal Rule of Civil Procedure 12(c) & (h)(2).

Count II must also be dismissed because Rachel Foerster Tannenbaum is not a plaintiff in this case and her husband does not have standing to litigate her claim. It is well-established that, words, in order to be defamatory, must refer to the particular plaintiff to be actionable. *See Kassowitz v. Sentinel Company,* 226 Wis. 468, 277 N.W. 177 (1938). Therefore, Count II will also be dismissed for lack of standing.

In moving for summary judgment, the defendant argues that all the statements he made in his letter are conditionally privileged because they were written to an attorney in connection with a probate matter and were intended to convey his concerns to the attorney and to the other heirs about his father's estate. In Count I of his complaint Tannenbaum claims that Foerster defamed him by sending out a letter stating that Tannenbaum had claimed to be an attorney and had threatened to sue the funeral director. Tannenbaum interprets this as accusing him of "criminal conduct" —presumably practicing law without a license.

■ Assuming for the sake of argument that the words of the letter are capable of a defamatory meaning, the court will consider whether Foerster's statements were conditionally privileged. Wisconsin courts have held that a person who has an interest in a particular subject is conditionally privileged to communicate in good faith with a person having a corresponding interest or duty in relation to the particular subject

matter. *Converters Equipment Corporation v. Condes Corporation,* 80 Wis.2d 257, 264, 258 N.W.2d 712, 715 (1977). Wisconsin has adopted the position of the *Restatement (Second) of Torts* which states that an occasion is conditionally privileged if the communication "affects a sufficiently important interest of the publisher" and "the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest." *Restatement (Second) of Torts* § 594 (1977), *quoted in Converters Equipment Corporation,* 80 Wis.2d at 264, 258 N.W.2d at 715. However, a conditional privilege is subject to the limitation that the person making the statement has reasonable grounds for believing the truth of the statement made and that the statement made is reasonably calculated to accomplish the privileged purpose. *Converters Equipment Corporation,* 80 Wis.2d at 264–65, 258 N.W.2d at 715–16.

■ In this case the record shows that Foerster's statement concerned a sufficiently important interest—his father's estate—and that it was made to an attorney and others having a similar interest (the remaining heirs). It also appears that the communication was intended to be of service in the lawful protection of Foerster's interest in the estate. Tannenbaum alleges in his First Amended Complaint that the statement was made with malice. *See* First Amended Complaint at ¶ 2. However, at this summary judgment stage and after the close of discovery, he has produced not one scintilla of evidence of malice. *See Anderson v. Liberty Lobby, Inc.,* —— U.S. ——, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986).

More importantly, Foerster has produced evidence that he made the statement complained of because he had a good faith and reasonable belief that the statement was true. In Wisconsin, truth is a complete defense to a claim of defamation. *See Thompson v. Kiekhaefer,* 71 F.R.D. 115, 116 (E.D.Wis.1976). Foerster alleges that he was merely repeating what he was told by Ardsley P. Congdon, the director of the

funeral home handling his father's funeral. The defendant has produced a letter from Congdon, who states that a person identifying himself as David Tannenbaum called him by telephone the day of the service:

> He said he was the husband of Rachel, a daughter of the said deceased Carl E. Foerster. He told me that under no circumstances was the casket to be open at the funeral even though he knew the wishes of the other children were contrary. He further stated to me that he was an attorney and that he would initiate a law suit against me if I did otherwise. He then asked me if I completely understood what he was saying.

Affidavit of Karl E. Foerster at Exhibit A.

Tannenbaum's affidavit, submitted in opposition to the motion merely sets forth bare denials. He says:

> And the statement made by Ardsley P. Congdon in his letter to Donald E. Mayew, saying that I told him I was an attorney is untruthful.

> The said telephone call that I made to Ardsley P. Congdon was on the morning of Monday, December 2, 1985.

Counter Affidavit of David Tannenbaum in Opposition to the Defendant's Motion for Summary Judgment on the Pleadings, and the Defendant's Motion for Summary Judgment Under Rule 56 of the Federal Rules of Civil Procedure at ¶¶ 5 & 6. The other allegations of Tannenbaum's affidavit relate to grievances against nonparties which are not part of the claims made in the complaint.

In *Celotex v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court determined that under Federal Rule of Civil Procedure 56, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* 106 S.Ct. at 2553. The moving party, however, need not support its motion with affidavits or

other evidence negating every element of the nonmoving party's claim. *Id.* Once the moving party files such a properly supported motion, the nonmoving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), except merely the pleadings themselves. *Id.* "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Id.* at 2552–533. Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). "This is true even where the evidence is likely to be within the possession of the defendant, as long as the plaintiff has had a full opportunity to conduct discovery." *Id.* "[T]o survive the defendant's motion, the plaintiff need only present evidence from which a jury might return a verdict in his favor." *Id.*

In the instant case the defendant has corroborated the denials of his answer with competent evidence, while the plaintiff has merely reiterated the conclusory allegations of the complaint and has failed to produce one shred of evidence disputing the truth of Foerster's statement or his lack of malice. Accordingly, the court will grant the defendant's motion for summary judgment on Count I of the First Amended Complaint as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## ORDER

For the reasons explained above, the court ORDERS that the Defendant's Motion for Judgment on the Pleadings Pursuant to Fed.R.Civ.P. 12(c) and 12(h)(2) (filed

October 31, 1986) IS GRANTED as to Count II of the First Amended Complaint.

IT IS FURTHER ORDERED that the defendant's Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56 (filed October 31, 1986) IS GRANTED as to Count I of the First Amended Complaint with costs awarded to the defendant.

IT IS FURTHER ORDERED that the plaintiff's Motion to Reconsider Additional Defendants (filed November 18, 1986) IS DENIED because it is both untimely and moot.

IT IS FURTHER ORDERED that judgment be entered in favor of the defendant and against the plaintiff on all counts and that this action IS DISMISSED.