James W. **MILSAP**, Plaintiff–Appellant,

v.

**JOURNAL/SENTINEL, INC.,** et al., Defendants–Appellees.

No. 95–3388.

United States Court of Appeals, Seventh Circuit.

Submitted Aug. 1, 1996.*

Decided Nov. 15, 1996.

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary; accordingly, the appeal is submitted on the briefs and the record. *See* Fed.R.App.P. 34(a); Cir. R. 34(f).

James W. Milsap (submitted), St. Paul, MN, pro se.

John R. Dawson, James L. Huston, and Paul Bragren, Foley & Lardner, Milwaukee, WI, for Defendants–Appellees.

Before RIPPLE, MANION, and ROVNER, Circuit Judges.

PER CURIAM.

James W. Milsap sued the publisher of *The Milwaukee Journal* and three of the *Journal*'s employees over a column written by defendant Gregory D. Stanford and published in the Journal on May 5, 1993. He asserted a variety of claims, including defamation under Wisconsin law. The district court granted summary judgment on all claims. *Milsap v. Journal/Sentinel, Inc.*, 897 F.Supp. 406 (E.D.Wis.1995). Milsap appeals, challenging only the decision on his defamation claim. The district court had diversity jurisdiction over the action, 28 U.S.C. § 1332, and we have jurisdiction of the appeal, 28 U.S.C. § 1291.

In the column in question, published in the "Other Views" section of the *Journal* and reprinted as an appendix to the district court's opinion, 897 F.Supp. at 413, Stanford reflects on the life and career of a fellow journalist, Carole Malone. The column begins by stating, "A highlight of Carole Malone's journalism career, according to her one-time editor, Walter Jones, was that 'she ran Jim Milsap out of town.'" The column explains that in the late 1960s, Milsap ran a job training program and also opened a facility called Inner City Hall, which (among other services) was to publish a newspaper called *The Torch*. Stanford, a college student at the time, began to work at *The Torch*. Meanwhile, Carole Malone was working for another newspaper, *The Milwaukee Courier*. According to the column, Malone walked into Inner City Hall and started to ask "a host of nagging questions nobody wanted to answer.... Inner City Hall officials wanted her to go away, but she stood her ground." The column continued:

> [Malone] ran exposes [sic] in *The Courier* on Milsap. It seems that he was fired from his anti-poverty job, where there may have been financial irregularities. And nobody knew where the money was coming from for the hall or his Cadillac. (No mystery, if my case was typical. He simply reneged on paying people.)

Malone's and other exposes, the column suggests, doomed Inner City Hall and *The Torch*.

Milsap's argument on appeal is that the statement in the column that "[h]e simply reneged on paying people" was defamatory.[1] The district court indicated that "statements of opinion are protected," and observed that the column appeared on the editorial page and was marked as opinion. 897 F.Supp. at 411. The district court thus suggested that all statements in the column—being statements of opinion—were protected from a defamation action. Yet under Wisconsin law, "communications are not made nondefamatory as a matter of law merely because they are phrased as opinions, suspicions or beliefs." *Converters Equipment Corp. v. Condes Corp.*, 80 Wis.2d 257, 258 N.W.2d 712, 715 & n. 10 (1977) (citing 50 Am.Jur.2d, Libel and Slander, § 15 at 529, 530 (1970); 53 C.J.S., Libel and Slander, § 9 at 45–47 (1948); Restatement (Second) of Torts § 566 (1977)). Instead, a communication that blends an expression of opinion with an expression of fact is actionable in Wisconsin "if it implies the assertion of undisclosed defamatory facts as a basis of the opinion." Wis. JI—Civil 2500 at 2 (1993) (citing Restatement (Second) of Torts § 566 (1977)). Likewise, there is no "wholesale defamation exemption [under the First Amendment] for anything that might be labeled 'opinion,' " because "expressions of 'opinion' may often imply an assertion of objective fact." *Milko-*

*vich v. Lorain Journal Co.*, 497 U.S. 1, 18, 110 S.Ct. 2695, 2705, 111 L.Ed.2d 1 (1990); *see also Pope v. Chronicle Pub. Co.*, 95 F.3d 607, 614 (7th Cir.1996); *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir.1993).

The statement that Milsap "simply reneged on paying people," in the context of the preceding sentence ("No mystery, if my case was typical"), implied that Milsap, in fact, reneged on paying Stanford. Stanford did not indicate that he was in possession of the additional fact that Milsap reneged on paying other people. Stanford merely extrapolated from his own situation, saying in effect that "if my case was typical[, Milsap] simply reneged on paying people." Even assuming *arguendo* that there are implications in other parts of the column that Milsap was in fact involved in "financial irregularities" and that "nobody knew where the money was coming from," [2] these statements do not imply the objective fact that Milsap reneged on paying people other than Stanford. Accordingly, the only objective fact implied about Milsap's failure to pay anyone is that Milsap reneged on paying Stanford. But to this extent, the statement "[h]e simply reneged on paying people" is actionable.[3]

Now that we have determined what the actionable aspect of the statement is, we must consider whether a trier of fact might

---

1. The defamation claim in Milsap's complaint focused on this same statement. Milsap's complaint might conceivably be interpreted to allege that several other statements were defamatory, including: "she ran Milsap out of town"; "Jim Milsap was a fast talker"; "Inner City Hall officials wanted her to go away"; "[i]t seems he was fired from his anti-poverty job, where there may have been financial irregularities"; and "nobody knew where the money was coming from for the hall or his Cadillac." In his opening appellate brief, Milsap does point to several of these statements, but only to show the context of the statement about reneging on paying people. In his reply brief, he seems to argue that some of these statements, such as that about "financial irregularities," were defamatory. However, because he failed to make these additional arguments in his opening brief, the arguments are forfeited on appeal. *United States v. Akinrinade*, 61 F.3d 1279, 1286 n. 3 (7th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 541, 133 L.Ed.2d 444 (1995); *see also* Cir. R. 28(f).

2. The assumption that these statements imply facts may not be warranted. One could say, rather, that these statements suggest that people were suspicious of Milsap, but not necessarily that they had facts to back their suspicions. On this view, the only fact implied about Milsap's financial dealings is that Milsap reneged on paying Stanford. If a jury accepted this view, it could find that Stanford's allegation of reneging was the most potent statement in the article, because it appeared to come from the author's personal experience. Accordingly, the doctrine of "substantial truth" does not require summary judgment, for a jury might find that the statement in question, if defamatory (*see infra*) and false, was significantly more damaging than the rest of the column. *See Meier v. Meurer*, 8 Wis.2d 24, 98 N.W.2d 411, 414 (1959).

3. Although we find that the blanket statement by the district court that "statements of opinion are protected" is incorrect, we note that the district court interpreted the statement in question in much the same way we do. 897 F.Supp. at 411

find it defamatory. A statement is defamatory under Wisconsin law " 'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.' " *Tatur v. Solsrud,* 174 Wis.2d 735, 498 N.W.2d 232, 233–34 (1993) (quoting Restatement (Second) of Torts § 559 (1977)). A statement of fact that Milsap reneged on paying an employee might hurt Milsap's ability to attract future employees or other business associates. It also could foster a general sense that Milsap is not to be trusted. We conclude that there is a genuine issue of material fact as to whether the statement defamed Milsap.

■ We must also consider the state of mind of the defendants that Milsap would be required to show to prove liability. If Milsap was a public figure, he must show actual malice. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). If Milsap was not a public figure, but instead a private individual, under Wisconsin law he need only show negligence. *Denny v. Mertz,* 106 Wis.2d 636, 318 N.W.2d 141, 148–51, *cert. denied,* 459 U.S. 883, 103 S.Ct. 179, 74 L.Ed.2d 147 (1982).

Milsap contends that the statement "[h]e simply reneged on paying people" was not germane to his role in a public controversy, and that therefore he was not a public figure for purposes of this statement. However, newspaper articles from 1967 to 1968—submitted by the defendants with their motion for summary judgment—show that Milsap put himself into the public eye in Milwaukee at that time, and that the price of his notoriety included reports of financial irresponsibility. In July 1967, Milsap was appointed the first director of the Milwaukee Opportunities Industrialization Center (OIC), an anti-poverty program. Milsap touted OIC as a program that would have an important impact in developing employment and leadership skills. On the inaugural day of classes in October 1967, Milsap addressed the 150 attendees, explaining to them the purpose of OIC. By April 1968, OIC had several hundred trainees. However, the board of OIC fired Milsap for what the chairman of the board called insubordination and lack of fiscal responsibility. A preliminary audit of OIC records found many financial irregularities, including failure to document or substantiate funds disbursed, and thousands of dollars in overdrafts. The audit also found that many persons on OIC's payroll lacked jobs in the approved budget or structure at OIC. We are not in a position to evaluate the truth or falsity of these articles. For our purposes, their significance is not in whether they were accurate, but in their indication that as a prominent figure in 1967 and 1968, Milsap was subject to questions about his organization's financial transactions.

Milsap argues that even if he had once been a public figure, he is no longer one, because his involvement in public controversy ended about twenty-five years prior to the column at issue, and because he has long since moved out of Milwaukee to St. Paul, Minnesota. The Supreme Court has explicitly declined to address the question "whether or when an individual who was once a public figure may lose that status by the passage of time." *Wolston v. Reader's Digest Ass'n, Inc.,* 443 U.S. 157, 166 n. 7, 99 S.Ct. 2701, 2707 n. 7, 61 L.Ed.2d 450 (1979). The circuits addressing the issue have indicated that an individual who was once a public figure with respect to a controversy remains a public figure for latter commentary on that controversy. *See Contemporary Mission, Inc. v. New York Times Co.,* 842 F.2d 612, 619–20 (2d Cir.), *cert. denied sub nom. O'Reilly v. New York Times Co.,* 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988); *Street v. National Broadcasting Co.,* 645 F.2d 1227, 1235–36 (6th Cir.1981), *cert. granted,* 454 U.S. 815, 102 S.Ct. 91, 70 L.Ed.2d 83, *cert. dismissed,* 454 U.S. 1095, 102 S.Ct. 667, 70 L.Ed.2d 636 (1981); *Brewer v. Memphis Pub. Co.,* 626 F.2d 1238, 1256–57 (5th Cir. 1980), *cert. denied,* 452 U.S. 962, 101 S.Ct.

("Mr. Stanford, in effect, says he, personally, was not paid by Mr. Milsap and suggests that other people *may* not have been paid either. He does not say it as a fact, merely a possible explanation.").

**1270**

3112, 69 L.Ed.2d 973 (1981); *Wolston v. Reader's Digest Ass'n, Inc.,* 578 F.2d 427, 431 (D.C.Cir.1978), *rev'd on other grounds,* 443 U.S. 157, 99 S.Ct. 2701, 61 L.Ed.2d 450 (1979); *Time, Inc. v. Johnston,* 448 F.2d 378, 381–82 (4th Cir.1971); *see also Partington v. Bugliosi,* 56 F.3d 1147, 1152 n. 8 (9th Cir. 1995) ("it appears that every court of appeals that has specifically decided this question has concluded that the passage of time does not alter an individual's status as a limited purpose public figure"). A person who injects himself into public controversy assumes the risk of negative public comment on his role in the controversy, both contemporaneously and into the future. *See Contemporary Mission,* 842 F.2d at 620; *Johnston,* 448 F.2d at 381–82 (citing, *inter alia, Estill v. Hearst Pub. Co.,* 186 F.2d 1017, 1022 (7th Cir.1951)). In Milsap's case, the risk includes comment on his financial responsibility during his time in the public eye. Accordingly, Milsap must be considered a public figure with respect to financial dealings at that prior time.

■ Thus, our task is to decide whether Milsap provided sufficient evidence of actual malice to survive summary judgment. To prove actual malice at trial, Milsap would have to show by clear and convincing proof that the statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not." *New York Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 285–86, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964); *see also Gertz,* 418 U.S. at 342, 94 S.Ct. at 3008. The district court held that Milsap could not show actual malice, in part because Stanford relied on his personal recollections and involvement. Indeed, Stanford's affidavit, submitted with the motion for summary judgment, states that he "relied on my personal experience" when making the statement at issue. Milsap was thus required to come forward with evidence that Stanford was lying about his personal experience, or recklessly disregarded the truth of that experience.

Milsap's argument is based on two affidavits, one from George Sanders and the other his own, which were submitted in opposition to the motion for summary judgment. Sanders stated in his affidavit that *The Torch* was his newspaper, and that, while Milsap advanced the money to start and run the newspaper, all of the decisions concerning the newspaper were made by Sanders. Sanders also asserted that he hired Stanford, and that *The Torch* never owed Stanford any money. Milsap's affidavit, like that of Sanders', averred that *The Torch* was Sanders' newspaper, and that Milsap's only participation was providing the start-up money. Milsap's affidavit also stated that Stanford had never done any work for him, and that he had not given Stanford a reason to believe that he owed Stanford money. In sum, Milsap put forth evidence that he had no decisionmaking role at *The Torch,* that *The Torch* did not owe Stanford money, and that Milsap did not owe Stanford money.

The defendants note that Milsap said in his complaint that he "began" *The Torch.* However, this statement is not inconsistent with his later statements that he provided the financing but did not run or make decisions for *The Torch.* "Began" might mean starting one's own organization, as the defendants would interpret it, but it also might mean being a primary force in creating the organization but having nothing to do with it after creation. The only other evidence cited by the defendants is Stanford's affidavit. The affidavit indicated that Milsap was the head of Inner City Hall, which published *The Torch,* and that Inner City Hall owed money to several staff members, including Stanford. We are thus faced with the affidavit of Stanford, contradicted by affidavits of Sanders and Milsap, as to whether Stanford had recounted the truth surrounding Milsap's alleged "reneging." Were a trier of fact to believe Sanders and Milsap and disbelieve Stanford, it could reasonably conclude that there was clear and convincing evidence that Stanford had lied or recklessly disregarded the truth in making the assertion in question. In other words, there is a genuine issue of fact as to Stanford's actual malice.

■ By contrast, Milsap has not indicated actual malice by the three other defendants—Journal/Sentinel, Inc. (the corporation that owns and publishes the *Journal*), David Behrendt (the editorial page editor of the *Journal*), and Paul Kritzer (the head of

Journal/Sentinel's legal department). Milsap asserted only that Behrendt approved Stanford's column for publication, that Journal/Sentinel published the column, and that Kritzer stated (in response to a letter of complaint by Milsap) that he did not see a reason for the *Journal* to retract the column. The allegations against Behrendt and Journal/Sentinel imply (at most) failure to investigate, and do not suggest the requisite knowledge of falsity or reckless disregard towards falsity. *See Gertz,* 418 U.S. at 332, 94 S.Ct. at 3003; *St. Amant v. Thompson,* 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). Meanwhile, the allegations against Kritzer do not suggest involvement in publication. Under a Wisconsin statute that covers publications in newspapers, a defendant's failure to retract a statement, as opposed to publication of the statement, is not an act of defamation. Rather, a defendant's failure to retract a statement after being requested to do so merely foregoes a defense to, or mitigation of damages for, a claim that the statement was defamatory. *See* Wis. Stat. 895.05(2); *Hucko v. Jos. Schlitz Brewing Co.,* 100 Wis.2d 372, 302 N.W.2d 68 (App.1981). Perhaps under certain circumstances a refusal to retract a published statement might be evidence of actual malice in its publication. *See* Restatement (Second) of Torts § 580A cmt. d (1977). But here, because Milsap does not provide evidence that Kritzer was involved in publication or knew of the reasons for publication, he has not shown that Kritzer's refusal to recommend a retraction might be indicative of malice by Journal/Sentinel or the other defendants.

With respect to defendant Stanford and his statement that Milsap reneged on paying him, the judgment is REVERSED and REMANDED for further proceedings consistent with this opinion. In all other respects, the judgment is AFFIRMED.