

NUMBER 13-09-00655-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG

SCRIPPS TEXAS NEWSPAPERS, LP D/B/A CORPUS
CHRISTI CALLER-TIMES AND THE E.W. SCRIPPS
COMPANY, ET AL.,                                                    Appellants,

v.

TERRY CARTER,                                                         Appellee.

On appeal from the 214th District Court
of Nueces County, Texas.

MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Garza and Benavides**
**Memorandum Opinion by Chief Justice Valdez**

Appellants, Scripps Texas Newspapers, L.P. d/b/a Corpus Christi Caller-Times

and the E.W. Scripps Company (collectively "Scripps"), Judy Hawley, Sylvia Whitmore,

Carol Scott (collectively the "Executive Committee Members"), and Damon Bentley,[1]

---

[1] Damon Bentley did not timely file a brief in this case. Accordingly, we dismiss his appeal for

appeal from the trial court's denial of their motions for summary judgment in favor of appellee, Terry Carter.[2]  We affirm in part and reverse and render in part.

## I.  BACKGROUND

Terry Carter served as president and CEO of the Chamber of Commerce in Corpus Christi, Texas.  In 2007, investors planned to develop a multi-million dollar mall called Crosstown Commons and requested $40 million in tax incentives from the city, which according to Carter, included tax rebates and reimbursements for road and utility improvements.  The city council was asked to vote on the $40 million tax incentive.  At a city council meeting on June 12, 2007, Carter suggested that the city council take its decision to grant the tax incentives "slow."

Scripps then ran a series of stories regarding the tax proposal.  According to Carter, Scripps then began publishing a series of twenty-five articles "falsely accusing [him] of mismanagement, financial improprieties, and of stealing a tape recording of a [Chamber of Commerce] board meeting."[3]

Carter sued the Executive Committee Members for defamation, tortious interference with prospective business relations, conspiracy, breach of fiduciary duty,

---

want of prosecution.

[2] Generally, an order denying a motion for summary judgment is not appealable.  *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996) (citing *Novak v. Stevens*, 596 S.W.2d 848, 849 (Tex. 1980)).  However, an exception to this rule applies in cases involving a media defendant in a defamation case.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(6) (West Supp. 2011) (allowing an appeal of a trial court's interlocutory order denying "a motion for summary judgment that is based in whole or in part upon a claim against or defense by a member of the electronic or print media, acting in such capacity, or a person whose communication appears in or is published by the electronic or print media, arising under the free speech or free press clause of the First Amendment to the United States Constitution, or Article I, Section 8, of the Texas Constitution, or Chapter 73").

[3] Carter claims that the Executive Committee Members published defamatory statements concerning his handling of the Chamber's affairs in these articles.  He further asserts that they accused him in the articles of mismanagement of Chamber funds in order to acquire a bonus that was tied to the Chamber's finances.

2

and tortious interference with an existing contract. Carter sued Scripps for defamation, conspiracy, and inducement to breach fiduciary duty. Appellants moved for no evidence and traditional summary judgment. The trial court denied the motions. This appeal followed.

## II.   PUBLIC FIGURE

By their first issue, appellants contend that Carter is a public figure, which requires him to prove at trial that Scripps published its news stories with actual malice. Specifically, Scripps argues that Carter's role as the CEO of the Chamber of Commerce made him a public figure because there was a public controversy regarding the Crosstown Commons, Carter's role in the controversy was neither tangential nor trivial, and the alleged defamation was germane to Carter's participation in the controversy.

### A.   Applicable Law

> Public figures fall into two categories: (1) all-purpose, or general-purpose, public figures, and (2) limited-purpose public figures. General-purpose public figures are those individuals who have achieved such pervasive fame or notoriety that they become public figures for all purposes and in all contexts. Limited-purpose public figures, on the other hand, are only public figures for a limited range of issues surrounding a particular public controversy.

*WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998) (internal citations omitted) (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974)).

A public figure suing a media defendant for defamation must prove that the defendant published the statement with actual malice. *Klentzman v. Brady*, 312 S.W.3d 886, 905–06 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (citing *Gertz*, 418 U.S. at 342). A private figure suing a media defendant, however, must only show that the media defendant acted negligently. *Entravision Commc'ns. Corp. v. Belalcazar*, 99

3

S.W.3d 393, 399–400 (Tex. App.—Corpus Christi 2003, pet. denied). Whether a person is a public figure is a question of law for the court to decide. *Klentzman*, 312 S.W.3d at 904.

In *Gertz*, the United States Supreme Court noted that it would not assume that a person who "had long been active in community and professional affairs," "served as an officer of local civic groups and of various professional organizations," had "published several books and articles on legal subjects," and "was consequently well known in some circles" was a general-purpose public figure. 418 U.S. at 351–52. The court stated:

> We would not lightly assume that a citizen's participation in community and professional affairs rendered him a public figure for all purposes. Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life. It is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation.

*Id.* at 352.

Thus, if a person is not a general-purpose public figure, we apply a three-part test in deciding whether that person is instead a limited-purpose public figure: (1) was the controversy at issue public both in the sense that people were discussing it and people other than the immediate participants in the controversy were likely to feel the impact of its resolution; (2) did the plaintiff have more than a trivial or tangential role in the controversy; and (3) was the alleged defamation germane to the plaintiff's participation in the controversy (the "three-part test"). *McLemore*, 978 S.W.2d at 571 (labeling the three-part test the "*Trotter/Waldbaum* test") (citing, among other cases,

4

*Waldbaum v. Fairchild Publ'g, Inc.*, 627 F.2d 1287, 1296–98 (D.C. Cir. 1980));

*Klentzman*, 312 S.W.3d at 904–05.

> To determine whether a controversy indeed existed and, if so, to define its contours, the judge must examine whether persons actually were discussing some specific question. A general concern or interest will not suffice. The court can see if the press was covering the debate, reporting what people were saying and uncovering facts and theories to help the public formulate some judgment.

*McLemore*, 978 S.W.2d at 572. Furthermore, a public controversy is more than simply a matter of interest to the public; it must be a dispute that has received public attention because the outcome affects the general public or some segment of it in an appreciable way. *Einhorn v. LaChance*, 823 S.W.2d 405, 412 (Tex. App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.); *see Time, Inc. v. Firestone*, 424 U.S. 448, 454 (1976) (finding that the general controversy surrounding divorce is not a public controversy for purposes of analyzing whether a party is a limited-purpose public figure).

> It is not enough that a plaintiff is involved or associated with a matter of public or general interest, no matter how significant or sensational. "A private individual is not automatically transformed into a public figure just by becoming involved in or associated with a matter that attracts public attention" or is newsworthy.

*Klentzman*, 312 S.W.3d at 904 (internal citations omitted).[4]

## B.    Discussion

Appellants first argue that Carter is a limited-purpose public figure because a public controversy existed, he had more than a trivial or tangential role in the public controversy, and the alleged defamation was germane to his participation in that controversy. Scripps further asserts that although Carter qualifies as a limited-purpose

---

[4] "Even engaging in criminal conduct does not make [] a person a limited-purpose public figure." *Klentzman v. Brady*, 312 S.W.3d 886, 905 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

public figure, "he is also a public figure by virtue of the high-profile position he held with a prominent civic organization."  Citing *Waldbaum v. Fairchild Publishing, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980), Scripps claims that "[s]ometimes position alone can make a public figure."  *See Waldbaum*, 627 F.2d at 1298–1300 (finding that the plaintiff was a limited-purpose public figure and setting out that the three-part test applies).[5]

Scripps appears to argue that this Court does not need to engage in the three-part test in order to determine whether Carter is a limited-purpose public figure because Carter's status as CEO of the Chamber of Commerce alone made him a limited-purpose public figure.  However, the cases cited by Scripps do not support such a conclusion.[6]

---

[5] We note that Scripps does not cite to any cases or authority finding that a person is a general-purpose public figure based solely on his chosen career path.  As stated above, in *Waldbaum*, the court did not conclude that the plaintiff was a general-purpose public figure and applied the three-part test to conclude that he was a limited-purpose public figure.  Moreover, in its analysis Scripps does not specifically argue that Carter is a general-purpose public figure.  Scripps merely makes the general statements as set out above.  The Executive Committee Members in their summary of the argument in one sentence state, "Carter is either a general-purpose or limited-purpose public figure."  However, they have not offered any citation to the record or argument with authority regarding whether Carter is a general-purpose public figure in their brief.  *See* TEX. R. APP. P. 38.1(I).  Accordingly, we will not address whether Carter is a general-purpose public figure.

[6] *See Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287, 1298–1300 (D.C. Cir. 1980) (finding that the plaintiff was a limited-purpose public figure and setting out that the three-part test applies); *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 433–34 (5th Cir. 1987) (applying three-part test and determining that the plaintiff was a limited-purpose public figure); *Milsap v. Journal/Sentinel Inc.*, 100 F.3d 1265, 1270 (7th Cir. 1996) (per curiam) (determining that the plaintiff who was appointed as the first director of an anti-poverty program was a limited-purpose public figure with respect to financial dealings of the program because he injected himself into the public controversy surrounding that issue); *A.H. Belo Corp v. Rayzor*, 644 S.W.2d 71, 84 (Tex. App.—Fort Worth 1982, writ. ref'd n.r.e.) (determining that the plaintiff was a limited-purpose public figure because he "thrust himself into the vortex of the public issue . . . and engaged the public's attention in an attempt to influence its outcome"); *Wright v. Haas*, 586 P.2d 1093, 1096 (Okla. 1978) (explaining that the plaintiff was a public figure because he "injected himself into the vortex of the public controversy" by sending letters to the editor intending for the media defendant to print the letters and "sought to engage the public's attention to influence public issues"); *Nelson v. WEB Water Dev. Ass'n, Inc.*, 507 N.W.2d 691, 697 (S.D. 1993) (deciding only that the plaintiff was a limited-purpose public figure; no claim was made that the plaintiff was a general-purpose public figure); *Little v. Breland*, 93 F.3d 755, 758 (11th Cir. 1996) ("The district court did not err in determining that Little was a limited-purpose public figure for purposes of his leadership of the Mobile Convention and Visitors Corporation as well as the controversy surrounding his sudden departure as president of the organization" because he was "intimately involved in the public controversy" regarding those issues); *see also Lacombe v. San Antonio Express News*, No. 04-99-00426-CV, 2000 Tex. App. LEXIS 556, at *7–8

Accordingly, we decline to conclude that Carter's position as CEO of the Chamber of Commerce alone made him a limited-purpose public figure. Based on the above cases and on Texas authority, we conclude that we must determine whether Carter is a limited-purpose public figure by applying the three-part test stated above. *See McLemore*, 978 S.W.2d at 571.

Scripps alleges that Carter is a limited-purpose public figure because there was a controversy "surrounding" the Crosstown Commons. Scripps claims that "Corpus Christi public officials, Carter, Chamber members, community activists, ordinary citizens and the news media were all actively discussing the pros and cons of the proposed TIF development." Scripps states, "Clearly, before the articles at issue were published, a substantial segment of the public and public officials were discussing different, strongly held opinions on the issue."[7]

_____

(Tex. App.—San Antonio Jan. 26, 2000, pet. denied) (mem. op.) (finding that the plaintiff was a limited-purpose public figure after applying three-part test articulated in *Trotter* and *Waldbaum*).

Appellants also cite *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 n.4 (4th Cir. 1993) to support their allegation that Carter is a general-purpose public figure. However that case is also distinguishable because the court determined, without analysis, that the plaintiffs (a Charitable Organization and its president) were general-purpose public figures because the "plaintiffs' status as 'public figures' [was] irretractably admitted on the face of the complaint."

Finally, appellants cite *Miller v. Transamerican Press*, 621 F.2d 721 (5th Cir. 1980). In that case, the court found that the plaintiff was a public figure because he was a high-ranking official of a union with "tremendous importance to our economy." *See id.* at 724. The court limited the plaintiff's public purpose figure status as to issues involving the plaintiff's official duties with the union. *See id.* This comports with a finding that the plaintiff was a limited-purpose public figure, although the court did not make such a distinction. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974) (explaining that a general-purpose public figure is a public figure "for all purposes and in all contexts" while a limited-purpose public figure "becomes a public figure for a limited range of issues").

[7] The Executive Committee Members, without citation to the record, merely state that, "Based on the uncontroverted summary judgment evidence, Carter is a public figure as a matter of law. As the president and CEO of the Chamber, the business advocacy group operating in the City of Corpus Christi, Carter clearly was a public figure. All of the statements made by [the Executive Committee Members] were germane to Carter's involvement with the Chamber." The Executive Committee Members offer no other argument regarding Carter's status as a limited-purpose public figure.

In its brief, Scripps points to portions of Carter's deposition wherein Carter stated that "the controversy started when the mayor gave four days to a brand new city council to absorb a $40 million tax increment financing agreement. All I said—and it's on the record, and I'm sure you've got a copy of it—was: Ladies and gentlemen, please slow this process down." Scripps's attorney then asked, "You said you stepped into the middle of the controversy [on June 12, 2007] and you said, 'Slow down.'" Carter responded "That's correct."[8] Accordingly, based on Carter's assertion that he "stepped into the middle of the controversy," we conclude that this is sufficient evidence to show that a controversy existed before Scripps published the alleged defamatory statements about Carter.[9] However, we disagree with appellants that the controversy was as broad as Scripps claims, that is, that the public controversy was "over the Crosstown Commons." We instead conclude that the existing controversy concerned whether the mayor had given the newly formed city council enough time "to absorb a $40 million tax increment financing agreement" ("TIF") because this is the only controversy that existed when Carter made his statements before the articles concerning his job performance were published.

Next, we must determine whether Carter's role in the existing controversy was more than trivial or tangential. *See McLemore*, 978 S.W.2d at 571. There is evidence

---

[8] We have reviewed Scripps's motion for summary judgment. In its motion, Scripps cited to its exhibits as either "Exhibit A, B, or C, etc." and indicated the corresponding page and line numbers. However, most of the exhibits in the appellate record are not marked as exhibits A, B, or C, etc. with the corresponding page and line numbers. There are over two thousand pages of evidence attached to Scripps's motion. Accordingly, because the record is voluminous, and we have no duty to independently locate Scripps's evidence, we will only review the evidence that Scripps has cited in its brief. *See Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 283 (Tex. 1994) (explaining that it has never been a part of an appellate court's duties to search the record for evidence itself).

[9] It appears from the record that the articles concerning Carter's alleged mismanagement of the Chamber's funds were published after this meeting.

that Carter injected himself into the controversy. As shown above, Carter acknowledges that at the meeting, he asked the city council to "slow down" in making its decision regarding the TIF. Furthermore, there is evidence in the record that Carter published an article entitled "Will Someone Please Set the Record Straight" as president and CEO of the Chamber of Commerce that was sent in an email with the subject line, "Your Corpus Christi Chamber News." In this article, Carter responded to the articles in the Caller Times regarding the TIF and to its reporting of remarks he made. Carter iterated that according to certain "professionals in dealing with TIFs," it would take "more than 4 days" to "work through such an agreement." Carter stated that the Caller Times had incorrectly reported that he is "anti-growth" and reiterated that the city council needed to slow down the decision-making process regarding the TIF. Carter then stated, "*The Corpus Christi Chamber of Commerce is supportive of prudent effective growth. To that end, we are supportive of responsible retail development and redevelopment in the City. It is equally the Chamber's position that the current TIF policy before the City Council needs to support existing retail developments and must incorporate*" several changes. (Emphasis in original). Carter listed one of the necessary changes as the following: "*The Chamber actively encourages the City Council to take the necessary time to thoughtfully consider all suggested modifications and opposition submitted by concerned citizens and thusly, we recommend holding on taking a vote on [the TIF matter] until such time the issues can duly be considered.*" (Emphasis in original).

In *McLemore*, the court explained that

[i]n considering a libel plaintiff's role in a public controversy, several inquiries are relevant and instructive: (1) whether the plaintiff actually

9

sought publicity surrounding the controversy; (2) whether the plaintiff had access to the media; and (3) whether the plaintiff "voluntarily engaged in activities that necessarily involved the risk of increased exposure and injury to reputation."

*McLemore*, 978 S.W.2d at 573 (internal citations omitted). The court stated that by publishing one's views, one invites public criticism and rebuttal; thus, one has voluntarily entered into one of the submarkets of ideas and opinions. *Id.*

Here, Carter acknowledged that he expressed his views at the city council meeting regarding the TIF and then sent a newsletter from the Chamber of Commerce stating that it was the Chamber's recommendation that the city council "hold[] on taking a vote" on the TIF. Carter published his views regarding the TIF, thereby voluntarily entering into the vortex of the controversy concerning the TIF. Furthermore, there is evidence in the record that as CEO of the Chamber of Commerce, Carter had access to the media. *See id.* Therefore, we conclude that Carter's role in the controversy was more than trivial or tangential.

Finally, we must determine whether the alleged defamation was germane to Carter's participation in the controversy. In his petition, Carter alleged that Scripps defamed him by publishing written statements concerning his job performance, specifically, his financial stewardship of the financial affairs of the Chamber of Commerce.[10] Carter further alleged that Scripps defamed him by publishing written

---

[10] Specifically, Carter alleged in his petition the following:

Defendant Caller Times and the E. W. Scripps Company, members of the print media, published written statements asserting as fact that Plaintiff's bonus is linked to the Chamber's financial performance, before leaving the room Plaintiff seized a tape recording of the meeting and left the building, there were highly questionable stewardship of the financial affairs of the Chamber by Plaintiff, the Chamber CEO's actions raise serious questions, there were financial irregularities, Plaintiff shifted money to the Chamber's Foundation, Plaintiff could be heard shouting during portions of the meeting and intimidation, secrecy and duplicity discredit a vital organization.

statements that "before leaving the room [Carter] seized a tape recording of the meeting and left the building." Scripps acknowledges that the "articles at issue concern Carter's job performance and financial stewardship of the Chamber." However, they argue that by speaking at the city council meeting, Carter "assumed the risk that the press, in covering the controversy, [would] examine" him with a critical eye. We do not agree that Carter's job performance and financial stewardship of the Chamber of Commerce is germane to whether or not the mayor of Corpus Christi gave the city council enough time to decide whether "to absorb a $40 million tax increment financing agreement." Accordingly, we conclude that the alleged defamation was not germane to Carter's participation in the controversy concerning the amount of time the city council had to decide whether to grant the TIF.[11]

We overrule appellants' first issue. We have determined that Carter is not a public figure; therefore, we conclude that he is not required to prove at trial that appellants acted with malice.

### III. DENIAL OF SCRIPPS'S MOTIONS FOR SUMMARY JUDGMENT

A private individual suing for defamation will prevail if he proves that the defendant (1) published a statement (2) that was defamatory about the plaintiff (3) while acting with negligence regarding the truth of the statement. *McLemore*, 978 S.W.2d at 571. A private individual may recover damages from a publisher for defamation upon a showing that the media defendant knew or should have known that the publication was false. *Entravision Commc'ns. Corp.*, 99 S.W.3d at 399–400.

---

[11] Even if we agreed that the existing controversy concerned the Crosstown Commons, the alleged defamation concerning Carter's job performance had nothing to do with the Crosstown Commons.

11

At trial and on appeal, Scripps only complained in its no-evidence and traditional motions for summary judgment that there was no evidence of malice and that Carter did not raise an issue of material fact regarding malice. In its summary judgment motions, Scripps has not alleged that there is no evidence of or that Carter has not raised an issue of material fact regarding negligence. Scripps merely contends he is a public figure and has not shown malice. However, we have concluded that he is not a public figure and is not required to prove malice. Therefore, because Carter is not a public figure, the trial court could have properly denied the motions for summary judgment on the basis that there are questions of material fact regarding whether Scripps published the alleged defamatory statements about Carter while acting with negligence regarding the truth of the statements, a finding Scripps has not challenged at trial or on appeal. We overrule Scripps's issues challenging the trial court's denial of its motions for summary judgment.

Scripps further argues that because Carter failed on his cause of action for defamation, his claims for conspiracy to defame and inducement to breach fiduciary duty are barred as well. However, we have overruled Scripps's issues regarding defamation. Therefore, Carter has not failed on his defamation claim. Accordingly, we also overrule Scripps's issues challenging the trial court's denial of its motions for summary judgment on Carter's other causes of action.

### IV. THE EXECUTIVE COMMITTEE MEMBERS' MOTION FOR PARTIAL SUMMARY JUDGMENT

By their second issue, the Executive Committee Members contend that the trial court erred in denying their motion for partial summary judgment because no material fact issue exists concerning whether they published a defamatory statement. The

12

Executive Committee Members complain that Carter did not present any competent summary judgment evidence raising a genuine issue of material fact that they made fourteen of the statements Carter claims they made and that they provided uncontroverted evidence that all of the statements they allegedly made were true.

## A.      Standard of Review and Applicable Law

In a no-evidence motion for summary judgment, we consider the evidence in the light most favorable to the non-movant, crediting such evidence if reasonable jurors could and disregarding all contrary evidence and inferences unless reasonable jurors could not. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (citing *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002); *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 208 (Tex. 2002)); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 825, 827 (Tex. 2005).  A no-evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.  *King Ranch, Inc.*, 118 S.W.3d at 751.  A no-evidence summary judgment is properly granted if the respondent does not bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact.  *Id.*

> Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact.  More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions."

*Id.* (internal citations omitted)

13

As noted, a plaintiff suing for defamation will prevail if it proves that the defendant (1) published a statement (2) that was defamatory about the plaintiff (3) while acting with negligence if the plaintiff was a private individual, regarding the truth of the statement. *Entravision Commc'ns. Corp.*, 99 S.W.3d at 399–400 (citing *McLemore*, 978 S.W.2d at 571). Furthermore, to recover damages against a media defendant when the suit involves an issue of public concern, the plaintiff—whether a public figure or private individual—must prove by a preponderance of the evidence the falsity of the challenged statement.[12] *Klentzman*, 312 S.W.3d at 898.

## B. Discussion

The Executive Committee Members challenge the trial court's denial of their no-evidence motion for summary judgment on the basis that Carter did not provide more than a scintilla of evidence showing that they published a false statement. In their no-evidence motion for summary judgment, the Executive Committee Members challenged all of the elements of each of Carter's causes of action.[13]

Carter attached several exhibits to his amended consolidated summary judgment response to the Executive Committee Members' motion for partial summary judgment. Those exhibits encompass over five thousand pages. Although Carter cited to exhibits "A, B, or C, etc." generally in his response, he failed to cite to specific page numbers.

---

[12] "[T]he constitutional requirements of the First Amendment supersede the common law presumption" of the falsity of the defamatory statement, wherein the defendant bears the burden of proving the statement's truth. *Klentzman*, 312 S.W.3d at 898.

[13] In their no evidence motion for summary judgment, the Executive Committee Members stated that Carter had no evidence "of the elements of his claims of tort[i]ous interference with prospective relations, tort[i]ous interference with an existing contract, defamation, conspiracy, libel per se, defamation per se and breach of fiduciary duty as set out below, and [Carter] has the affirmative duty to provide credible evidence in support of such claims." The Executive Committee Members then set out the elements of each of the above mentioned causes of action. The prayer requested partial summary judgment regarding the above mentioned causes of action.

14

The trial court granted appellants' objections to Carter's response and struck Carter's exhibits A-Q, BB, and CC attached to his response "that were not specifically referenced by page and line numbers." The trial court also struck several of the paragraphs and sentences in Carter's response.[14]

On appeal, Carter challenges the trial court's granting of appellants' objections to his exhibits and response. We conclude that it matters not whether the trial court abused its discretion by granting appellants' objections to Carter's exhibits and response because we are not obligated to review a voluminous record in order to determine whether Carter raised an issue of material fact. *See Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 283 (Tex. 1994) (explaining that it has never been a part of an appellate court's duties to search the record for evidence itself); *see also Shelton v. Sargent*, 144 S.W.3d 113, 120 (Tex. App.—Fort Worth 2004, pet. denied) (citing *Blake v. Intco Invs. of Tex., Inc.*, 123 S.W.3d 521, 525 (Tex. App.—San Antonio 2003, no pet.); *Guthrie v. Suiter*, 934 S.W.2d 820, 826 (Tex. App.—Houston [1st Dist.] 1996, no writ) ("holding that trial court did not abuse its discretion by refusing to consider a five hundred page deposition attached to the nonmovant's response when the nonmovant did not point out to the trial court where in the deposition the issues set forth in the response were raised")).

We have reviewed Carter's response to the Executive Committee Members' motion for partial summary judgment and the evidence that he cites by page and line number. This evidence does not raise an issue of material fact regarding whether the

---

[14] We note that we are unable to decipher exactly what evidence the trial court actually admitted based on the general nature of its order granting appellants' objections.

15

Executive Committee Members made the alleged defamatory statements. Accordingly, we sustain the Executive Committee Members' second issue.

## V.  OTHER CAUSES OF ACTION

By their third issue, the Executive Committee Members contend that they are entitled to summary judgment because Carter provided no evidence of the elements of breach of fiduciary duty, conspiracy, tortious interference with an existing contract, and tortious interference with prospective relations. Regarding these causes of action, Carter did not cite any evidence in his response to their motion for partial summary judgment. Therefore, he did not raise a genuine issue of material fact on those challenged elements. Accordingly, we sustain the Executive Committee Members' third and final issue.

## VI.  CONCLUSION

We affirm the trial court's denial of Scripps's motions for summary judgment. We reverse the trial court's denial of the Executive Committee Members' motion for no evidence summary judgment and render judgment in their favor.[15]

_____
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
21st day of November, 2012.

---

[15] Carter filed an untimely notice of cross-appeal in this matter. In his response to the letter from this Court requesting that Carter cure the defect, Carter argued that he wished to appeal the trial court's granting of summary judgment in favor of "a second set of defendants." However, he stated that he was unable to make such an appeal because the summary judgment is not a final judgment and no exception applies for appellate purposes. He further argued that if this Court "decide[d] to overrule the trial court and render summary judgment for all [appellants] asserting the First Amendment exception . . . . on its face" the order granting summary judgment will "appear to be final" and Carter's "right to appeal that adverse ruling may be forever lost." We dismiss Carter's cross-appeal as moot because we have not rendered summary judgment in favor of all of the appellants in this case and the summary judgment does not "appear to be final" as argued by Carter.

16